SARAH WILSON and others, appellants,
*against*
ROBERT TROUP and others, respondents.

It seems, that an appeal from a final decree brings up an interlocutory order suppressing certain depositions, which may bear upon the final decree.

A power of attorney to execute a mortgage, authorizes the attorney to insert in the mortgage a power of sale, on default of payment.

This does not alter the nature of the instrument, or give any greater security than is implied in the word *mortgage.*

The power to sell applies solely to the remedy; and impairs no right of the mortgagor.

A power to give a *mortgage* must be taken to mean the instrument in common use as a mortgage, where the power is to be executed.

Mortgages in this state generally include a power of sale, or summary foreclosure;

And a power by a citizen of Pennsylvania to execute a mortgage in this state, implies an authority to insert a power of sale, &c.

It is not necessary to the validity of a mortgage, or a purchase under a power of sale therein, even as against subsequent purchasers, &c., that the power to execute it should be registered according to the statute, (1 R. L. 373, s. 2.)

This is not necessary as against the mortgagor.

The provision that the power of sale shall be recorded before a conveyance under it shall be executed (sess. 36, ch. 32, s. 6, 1 R. L. 374,) is for the benefit of the purchaser; and was intended to protect him against subsequent purchasers, &c.

But it does not lie with the mortgagor to object, that a sale and conveyance have been made under the power, without its having been recorded.

It was conceded by the court, that the registry of a power, the proof or acknowledgment of which was taken out of this state, though before a commissioner resident here, is a nullity.

A mortgagee, though he have conveyed the whole mortgaged premises with warranty in fee, can yet foreclose; for this conveyance of the land will not pass his interest in the mortgage.

So if he have thus conveyed only a part of the mortgaged premises, he may yet foreclose for the whole under a power of sale in the mortgage; and may himself become the purchaser.

Whether a mortgagee, having assigned part of his interest in the mortgage, may foreclose under a power of sale in his own name, or must give notice in the name of himself and his assignees? *Quere.*

Though the mortgagee convey in fee a part of the mortgaged premises, this does not prejudice the right of the mortgagor to redeem.

A statute foreclosure of a mortgage is equivalent to a foreclosure in equity.

If a mortgagee convey a part of the mortgaged premises with warranty,

and afterwards himself purchase the whole under the power of sale, the purchase will enure to the benefit of his grantee.

The power to execute an instrument of known and definite signification in the law, will not authorize the execution of one having a different effect:

Thus, a power to convey does not authorize the attorney to insert in the conveyance a covenant of seisin.

In the construction of all contracts, the situation of the parties, and the subject matter of the contract are to be considered, in order to determine the meaning of any particular provision.

This rule applied.

A mortgagor is deemed seised as to all persons except the mortgagee, &c.

Both at law and in equity, a mortgage is considered a mere security for money:

The interest of the mortgagee is a chattel merely;

And will pass by delivery without writing.

A mortgage is a mere incident to the debt;

And an assignment of the interest in the land without the debt is a nullity.

A mortgage is good without a power of sale.

The *words* even of a naked power are not always confined to what they necessarily import in their strictest legal sense;

But they are to be construed according to the intent of the parties.

This rule considered upon authority;

And applied.

The nature of a power of sale in a mortgage considered.

It is a power coupled with an interest.

*It seems*, it is a power appendant, and not in gross.

The distinction between powers appendant and in gross.

The first is where the donee of the power has an estate in the lands; and the estate to be created by the power does, or may take effect in possession, during the continuance of the estate to which the power is annexed;

As a power to a tenant for life, in possession, to make leases.

The latter is where the donee of the power has an estate in the lands; but the estate to be created under the power is not to take effect till the determination of the estate to which it relates.

If the donee of a power appendant and coupled with an interest (as a mortgagee) convey his whole estate, this would pass, but not extinguish the power.

This is the common case of the assignment of a mortgage;

Which carries not only the legal estate, but all the remedies or powers attached to it.

But a conveyance of part of the estate will not carry with it a corresponding portion of the power;

Because the power is indivisible.

It can operate but once, and then is exhausted.

A trustee may purchase for the exclusive benefit of his *cestuy que trust*.

And if he purchase for his own benefit, it is good until set aside by the *cestuy que trust*, who alone has a right to object.

It seems, that communications made to an attorney at law, by one who has retained him to conduct a foreclosure by advertisement, under the act

concerning mortgages, such communications having relation to the business of the foreclosure, are to be considered as confidential communications between attorney and client; and therefore inadmissible in evidence against the client.

APPEAL from the Court of Chancery. William Wilson, the father of the appellants, late of Northumberland, in Pennsylvania, deceased, held an interest in a contract with one Charles Williamson, for 6000 acres of land in Steuben and Ontario counties, which Williamson was to convey for the consideration of £795, New York currency. Oct. 6, 1796, Wilson gave a power of attorney to Daniel Faulkner, to receive a conveyance, with warranty, and execute bonds and mortgages to Williamson, and do and perform all things necessary and lawful to secure the purchase money. Oct. 21, 1796, Faulkner received the deed, and executed a bond and mortgage accordingly. *This mortgage included a special power to the mortgagee, &c., to sell the land and raise the money due on default of the mortgagor, &c., to pay according to the bond,* (which, by our statutes, 2 Greenleaf, 101, act of 26th Feb. 1788, 1 K. & R. 482—re-enactment, 6th April, 1801, and 1 R. L. by Woodworth & Van Ness, 373, s. 5, gives the mortgagee, his assigns, &c., the right of summary foreclosure, without a bill in equity.) The mortgage, but not the power to Faulkner, was registered in the Clerk's office of Steuben County, Oct. 24, 1796.

Williamson assigned this mortgage to Sir William Pultney, who die intestate in 1805, leaving Henrietta Laura Pultney, Countess of Bath, (wife of Sir James Pultney,) his only child and heir at law. She died in July, 1808, intestate as to her real estate, which descended to Sir John Lowther Johnstone, her son and heir at law.

On the death of Sir William Pultney, the respondent. Robert Troup, took out letters of administration on his estate.

From 1806, to May, 1811, the respondent, Troup, as agent successively of Sir William Pultney and Johnstone, sold and conveyed divers parcels of the mortgaged premises to eleven of the other respondents.

Notwithstanding these sales, Troup, as administrator of Sir William Pultney, Oct. 16, 1810, advertised the mortgaged premises for sale, under the power in the mortgage, and April, 1811, sold them to Samuel S. Haight, the highest bidder, at $350, who bought at the request of Troup, and the same day conveyed the premises, for a nominal consideration, to Johnstone and his wife.

Haight was an attorney at law, and under the direction of Troup, aided in conducting the foreclosure. He was examined as a witness below, to impeach the proceedings, and one question was, whether he was admissible.

The power of sale was proved by a subscribing witness, before a Master in Chancery of this state, but who went into Pennsylvania to take the proof, Nov. 20, 1809, and registered Dec. 13, 1809. This error was not discovered till after the sale, when on the 8th June, 1812, the power was regularly proved, and on the 11th June, duly recorded.

William Wilson died intestate, A. D. 1813, and the appellants are his heirs at law.

Since the sale at auction, in 1811, Troup, as agent of the Pultney estate, had gone on selling different parcels of the mortgaged premises, &c., till on the 25th Sept. 1820, the appellants filed their bill to redeem, and for an account, &c.

The bill also charged unfairness and fraud in conducting the sale under the power. The facts bearing upon this question, with the other additional facts which it is deemed material to notice, are sufficiently stated in the opinions of the Judges, and by the Chancellor in giving the reasons of his decree, which was, to dismiss the bill without costs.

The reasons for this decree were assigned as follows, by

The late CHANCELLOR KENT. The great and leading point in the case is, whether the sale of the mortgaged premises, under the power contained in the mortgage, was duly made, under a competent power.

If this point be determined in favor of the sale, it will be unnecessary to examine whether there was any sufficient ground to consider Wilson as having abandoned or waived by his acts and his acquiescence, prior to the sale, his equity

of redemption, in the mortgaged premises, so as to have concluded himself and his representatives from a right to redeem.

The letter of attorney authorized Faulkner, for Wilson, and in his name, to ask, demand, and receive of Williamson deeds for the premises, and to sign, seal, deliver and acknowledge, a *mortgage or mortgages, &c., bonds to the amount of the consideration money remaining due, for the better securing of the same according to an agreement thereof between them made,* and granting to his said attorney full power and authority *to do and perform all things necessary and lawful* to the obtaining to him and for his use, a title, &c., and *securing the consideration money therefor to the aforesaid Charles Williamson.*

Under this power a deed was received by Faulkner, from Williamson to Wilson, and a mortgage simultaneously and of the same date, (being the 21st October, 1796,) executed by Faulkner, for and in the name of Wilson, to secure the amount of the consideration, including a rateable compensation for mills built upon the premises. This allowance for the mills, which increased the amount of the mortgage beyond the actual consideration in the deed, was in pursuance of an agreement between Williamson and Faulkner, who acted on behalf of all the parties in interest in the premises, and which agreement was alluded to in the letter of attorney. The mortgage was in the printed form used in the offices of the agency of the Pultney estate, and it contained the usual power to sell on default of payment, and which power had been invariably inserted in all the mortgages taken by the Pultney agent. A power to mortgage would seem to include in it a power to authorize the mortgagee to sell on default of payment, because the power to sell is one of the customary and lawful remedies given to the mortgagee. It is a power which has been repeatedly regulated by statute, and is therefore known to the law, and is in universal use. It has consequently become a power incident to the power to mortgage; and will, of course, be included in the power to mortgage, if there be nothing in the instrument conveying the power specially excluding it, and the party creating the power be competent in age to grant it.

Courts of Equity look to the end and design of the parties, in considering the extent of powers, and to a substantial rather than to a literal execution of the power    On this. principle, a power limited in terms has, in favor of the intention, been deemed a general power, and a general power in terms has been cut down to a particular purpose.    Why should we not conclude that the parties in this case had in contemplation a mortgage in the usual sense of that security, with all the remedies then in use and recognized by law ? It is very certain that the mortgagee meant a mortgage with a power to sell, because it was his invariable practice to take mortgages with such a power ; and when he entered into a covenant with Faulkner and others, in 1795, to sell the land, *and take a good and sufficient bond and mortgage*, it is to be presumed that the same kind of mortgage was understood between the parties, which was afterwards executed by F. and accepted by W. under the power.    It is equally reasonable to presume that Wilson, who created the power, from the proximity of his residence to the Pultney offices, his intimacy with Faulkner his attorney, and the general notoriety of the transactions of the agency of the Pultney lands, must have been acquainted with the practice of the Pultney agents in taking mortgages, and that he also meant a mortgage full and effectual, according to that practice, with all the customary remedies to enforce it.

A power to mortgage is a power to give the same security under that name, in as full and effectual a manner as the party himself, who created the power could give.    The letter of attorney was general in its terms : It was to give " *a mortgage*," and " to do and  perform  all  things  necessary and lawful for securing the consideration money."    If the power to sell was usually inserted in a mortgage, as an ordinary and lawful part of it, the attorney in this case had authority to insert it, under his general authority to mortgage, and to do what was necessary and lawful.    Every thing incident to a mortgage, which Wilson himself could do, in and by the act of giving a mortgage, Faulkner could do under the power.

Powers are construed with this liberality, and to this extent.

In *Liefe* v. *Saltingstone*, (1 Mad. 189 ; 1 Freem. 149, 163, 176, S. C.) the testator devised his farm to his wife, for her natural life, and by her to be disposed of to such of his children as she should think fit. She conveyed the estate to her son, in fee, and the power was held well executed, even at law. The principle of the case was, that where *the devisor gives to another a power to dispose, he gives to that person the same power that he himself had to dispose.* If the devise be that I. S. may sell my land, he may sell the inheritance.

There is much force to be given to the validity of the power to sell, from a view of the doctrine touching leasing powers. If a tenant for life has power to grant leases "requiring the best improved rents," he may cause to be inserted in the leases the usual covenants for payment of the rents, and a clause of re-entry upon non-payment, though the power be silent as to any covenants of that kind. These incidental provisions are considered as implied in the power of leasing. Such provisions were deemed valid, though the lease was on other accounts much criticised in *Jones* v. *Verney*, (Willes' Rep. 169,) and the omission of them would be fatal under such a power, according to the opinion of Lord Mansfield, in *Taylor* v. *Horde*, (1 Burr. 125 ;) and to show the liberal construction of powers in equity, in furtherance of the end for which they were created, we may refer to the case of *Roberts* v. *Dixall*, (2 Eq. Cas. abr. 668, pl. 19,) in which a power to appoint and divide an estate, was held well executed by a charge of a sum of money upon it ; for though that was not within the direct terms of the power, yet Lord Hardwicke held it to be within the intent, and an execution of the power in substance. Again, in *Long* v. *Long*, (5 Ves. 445,) it was held, that a power to charge an estate with the payment of moneys for the benefit of the children, as he should think fit, would authorize a disposition of the estate itself. A power to charge included a power to sell, and Sir William Grant afterwards (6 Ves. 797) cited the case as establishing that point, and he seems to have sanctioned in *Bullock* v. *Fladgate*, (1 Ves. & Bea. 471,) such deviations

from the letter of the power ; and though it is considered as a questionable point, whether a power to sell or exchange would authorize a partition of land, (*Abel* v. *Heathcote,* 2 Ves. Jun. 98, 4 Bro. 278, same case questioned in *M' Queen* v. *Furquhar,* 11 Ves. 467, and *Attorney General* v. *Hamilton,* 1 Madd. Rep. 214,) yet Mr. Sugden, (Tr. on Powers, 2 ed. 446, 449,) gives it as the result of the cases, that where a freehold interest is authorized to be appointed under a power, a different species of estate, less valuable, will be supported in equity. We surely cannot be departing from the spirit of all these cases, when we construe a power to mortgage, as involving in it a power, to add the ordinary and lawful remedies prescribed by law, upon breach of the condition of the mortgage. The remedies are the means for rendering the mortgage an effectual security for the debt. The statute foreclosure is cheaper and more simple, and generally more expeditious than a foreclosure by a bill in Chancery ; and it is always deemed a matter of some consequence by the mortgagee, that he should have such a remedy within his discretion. At so early a period as the date of the mortgage, when the practice of the Court of Chancery was quite limited and in very few hands, the authority to sell by act of the party must have been deemed of almost incalculable value. That power is still necessary to the completion and perfection of the security, because ·it affords the alternative remedy authorized by law. A power to mortgage does, therefore, very clearly in my view of the case, carry with it a power to authorize the mortgagee to foreclose ·by selling under the statute. The power intended a mortgage in the best manner that it could be made consistently with law, and as between the mortgagee and mortgagor, the equity of the case is, that the former should be deemed clothed with all the customary rights and privileges of a mortgagee, and more especially when it appears that this same mortgagee was in the invariable habit of taking mortgages in the form adopted in this case.

A different construction would make the mortgage operate most injuriously upon the mortgagee, and in the present instance, by unsettling titles, it would make immense

mischief. It may be observed, in aid of the construction I have adopted, that Wilson acquiesced, during his lifetime, in the execution of the power. He is presumed to have had early notice of the bonds and mortgage, and of the terms of them, and not one word of objection to the power was made by him, from October, 1796, to his death in 1814. It is with the appearance of great injustice, that his representatives should at this day attempt to set aside the sale upon such a pretext.

If the power be admitted to have been inserted in the mortgage by power authority, it puts an end to the present claim. The sale was fairly made upon the due public notice required by law. This is very satisfactorily proved; and there is no ground for the charge of irregularity touching any part of the proceedings. Something was said upon the argument about fraud in the sale, but there is no such allegation in the bill, nor is it made a point in the case by the complainants' counsel. The charge is irregularity and want of authority, and there is nothing in the proofs to give countenance to the suggestion of fraud, had it even been made a substantial averment in the bill. The power to Faulkner to execute the mortgage is fully proved. It was recorded in 1809, and again in 1812, and the power contained in the mortgage was duly recorded as early as June, 1808

There is not, then, any ground to impeach the title held under the sale. The mortgaged premises were purchased by S. S. Haight, on behalf of the proprietors of the Pultney estate, and the statute authorized the mortgagee or any person on his behalf, to purchase. The title thus acquired cannot, to use the words of the statute, "be defeated in favor of, or for the benefit of any person claiming the equity of redemption."

The only remaining pretence upon which the sale is to be defeated, is, that the defendants had previously conveyed a part of the premises in fee. These conveyances were made under the assumption, that Wilson had abandoned all claim to the equity of redemption, and the deed from Williamson to him, was in the possession of the Pultney agent. If that deed had been surrendered by Wilson, (and we cannot

otherwise account for its being in possession of the mort-gagee,) it affords very strong color for the inference that the right of redemption had been truly abandoned; and that inference is much strengthened by his long acquies-cence in the possession taken, and acts exercised by the mortgagee as owner, and by the non-payment of any part of the principal and interest of the consideration, accor-ding to the contract. But I do not lay much stress upon this assumed fact of an abandonment of the equity of re-demption, and I refer to it only as evidence of the good faith and sincerity with which acts of ownership over the property were exercised. On this point, however, we need not dwell, for the mortgagee afterwards treated the property as covered by a subsisting mortgage, and the equity of re-demption was regularly foreclosed. The sales by the mort-gagee could not, upon any reasonable principle, deprive him of the right of foreclosing the mortgage, nor could they prejudice the right of the mortgagor to redeem. If the mortgage was still subsisting, the purchasers under the mort-gagee took subject to the mortgage, and the right of re-demption : a mortgagee before foreclosure, cannot even make a lease so as to bind the mortgagor when he comes to redeem. (*Hungerford* v. *Clay*, 9 Mod. 1.)

The suggestion that the mortgagee could not foreclose, because he had previously sold parcels of the land, is entire-ly without any foundation in precedent or justice. The sales created of themselves no obstacle to the right of re-demption. If the mortgagor was entitled to redeem, he could recover the possession as against those purchasers, equally as well as he could recover it against the mortga-gee himself, or his heirs after his death; a mortgagee can-not, by fine and non-claim, bar the equity of redemption. The fine displaces nothing. It is still the same estate, (Lord Redesdale, 1 Sch. and Lef. 380.) The same pow-er that awarded the redemption, could award a restitution of possession. The argument on the part of the plaintiffs, would go to prove that a foreclosure by bill was equally barred, as a foreclosure by advertising under the statute. In both modes the mortgagor should come in before the sale,

and make his defence. He is presumed in law to have equal notice of the proceeding in each case, and a foreclosure and sale is as much a bar in the one case as in the other.

A good deal was said upon the argument, touching the disclosure by Haight, of the confidential correspondence between him and Troup, during the time that he was employed to conduct the foreclosure. As I see nothing in that correspondence that applies to any part of the case, except the point of abandonment by Wilson, of the right to redeem, (and on which I have not thought it necessary to dwell,) the competency of this testimony becomes immaterial. But I ought not, perhaps, to let that question pass, since it has been discussed before me, and will probably be discussed again in this Court. A motion was made during the argument, to suppress these letters, and the question on their competency was reserved.

Haight was employed by Troup to foreclose the mortgage, and he says he believes that the business of conducting the foreclosure would not have been confided to him, if he had not been a lawyer. It was professional business, and in respect to that particular transaction, the parties appear to have stood in the relation of attorney and client, and the communications in the letters of Troup, prior to the sale, were upon every reasonable ground, entitled to the protection of that relation, as confidential communications. The voluntary disclosure of those letters relating to this subject to the adverse party, I consider as a reprehensible breach of trust, and which the right and privilege of the client require should not be permitted in a court of justice. The letters related also to other business respecting the general agency of the Pultney estate : but that circumstance does not affect the confidential communications relative to the particular business confided to him as attorney, nor destroy the confidence under which the law considers them as received. I should deem it a dangerous precedent, and one that would impair the good faith that ought to be observed, and which the public good and those valuable interests, which clients must confide to their counsel, require to be observed, to lend

the sanction of this Court, to the disclosures in question; those letters are therefore inadmissible as evidence in the cause.

My conclusion upon the case was, that the plaintiffs were not entitled to redeem, and I accordingly dismissed the bill without costs.

*H. Bleecker*, for the appellants, made the following points:

1. The abandonment set up by the defendants is in itself invalid, and could not be established by parol evidence.

2. The abandonment is disproved.

3. If such abandonment ever existed, it was waived by the subsequent proceedings on the part of the representatives of Sir William Pultney.

4. Daniel P. Faulkner, who executed the mortgage as William Wilson's attorney, had no authority to insert therein a power of sale under the statute.

5. The power of attorney, under which the mortgage was made, was not legally recorded before the sale under the mortgage, the proof being taken out of the state.

6. The mortgagee or his assignees, having conveyed divers parts of the mortgaged premises in fee simple, with warranty, before the sale under the power, could not proceed to sell or buy under the power.

7. At any rate, the sale in this case was void, it not having been made for the purpose of collecting the money due on the bond.

8. The complainants are entitled to redeem the mortgaged premises, and to be restored to the same, on payment of the mortgage money, as if it had been paid when due.

9. But if it shall be decided, that any part of the mortgaged premises is held by *bona fide* purchasers, not affected by notice, the complainants ought to have a decree for the purchase money, or the present value of the premises, at their election, allowed to them in extinguishment of the mortgage.

10. After the mortgage shall be thus extinguished, the complainants ought to be allowed, as to the remaining premises in the hands of such *bona fide* purchasers, to have

their portion of the securities for the purchase money, or a decree that the present value of their share of such premises be paid to them by the representatives of Sir William Pultney.

1, 2, 3. As to the abandonment. Wilson had purchased and given a mortgage. This gave him a full and perfect title to every purpose, except that of securing the debt.(a) He owned an estate which might descend or be devised ;(b) it was subject to execution ;(c) and he might even have maintained trespass against the mortgagor. His estate could not be passed from him without a technical conveyance ; for both at law and in equity, the freehold is deemed to be in the mortgagor, the mortgagee retaining a mere chattel interest.(d)    The right to redeem is protected with the greatest jealousy, and every clause in its derogation is holden to be void.(e)    Even cancelling the deed does not divest a title.(f)    Yet it is claimed to overturn these well settled doctrines in relation to the real property, by parol proof(g) of an abandonment, or rather by mere inference, for there is no positive evidence of abandonment.    Is a man to be deprived of his title to real estate in this manner ?    Possession continuing in the mortgagee cannot operate as evidence of an abandonment.    He has a right to such possession the moment that the mortgage is executed, subject, indeed, to be defeated by a payment of the money.    The only difference between this and the ordinary case is, that he must account for rents and profits.    True, it is common for the mortgagor to retain possession, but this is not always the case, and even if he be in possession, the mortgagee may give notice to his under tenants, and claim and enforce a payment of rent from them.

Haight's evidence shows unfairness in the proceedings to foreclose.    He was clearly admissible, for he was not acting in the character of an attorney at law, but a mere private agent.    No suit was pending.

*M. Van Buren*, for the appellant, submitted whether this question could be gone into upon the appeal, which was confined to the decree of dismissal.    The order suppressing

(a) 18 John 114.
(b) 1 Pow. on Mort. 338.
(c) *Waters et al.* v. *Stewart*, 1 Caines' Cas. Err. 47.
(d) *Stanard* v. *Eldridge*, 16 John. Rep. 254. *Hitchcock et ux.* v. *Harrington*, 6 id. 290. *Jackson* v. *Willard*, 4 id. 41. *Runyan* v. *Mersereau*, 11 id. 534.
(e) 1 Pow. on Mort. 146. 2 Atk. 495. *Willet* v. *Winnell*, 1 Vern. 488.
(f) 2 H. Bl. 263.
(g) *Jackson* v. *Carey*, 16 John. 302. *Same* v. *Shearman*, 6 id. 19. 1 Ves. sen. 253.

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

Haight's deposition was distinct. It was entered after the final decree which was January 20th, 1823; and the order of suppression, February 26, 1823, recites that it was not entered at the time of the final decree, and it is ordered to stand *nunc pro tunc* as of January 20th.

WOODWORTH, J. The amount of it is, then, that both decrees were made January 20th, but the order of suppression was, by mistake, not entered.

*Van Buren,* said the order of suppression was first made, but, by mistake, not entered. It was, after the final decree, entered as of the same date with the latter. But the two decrees are distinct. He read from the petition of appeal which was from the final decree only.

*Semb.* appeal from final decree brings up an interlocutory order suppressing depositions, which may bear upon the final decree.

SUTHERLAND, J. Does not the appeal from the final decree involve every interlocutory decree bearing upon it?

*Bleecker.* It has been so decided by this Court over and over again.

WOODWORTH, J. I think the question as to Haight's competency may be considered one on which the final decree turned. The order suppressing his evidence, is, in this point of view, brought up with the final decree.(*h*)

(*h*) Vid. *Atkinson* v. *Manks*, 1 Cowen's Rep. 702, and the cases there cited. S. P.
(*i*) Peak. Ev. 117, n. (B.) ed. 1804.
(*j*) 1 id. 129.

*Bleecker.* The parties have a right to the evidence of agents, from the necessity of the case.(*i*) Peake, in his Treatise on Evidence, shows the extent of the privilege claimed by the respondents. He says,(*j*) that, " In like manner as the law respects the peace of men, it considers the confidential communications made for the purpose of defence in a court of justice. By permitting a man to entrust his cause in the hands of a third person, it establishes a confidence and trust between the client and the person so employed. A counsel, solicitor, or attorney cannot conduct the cause of his client, if he is not fully instructed in the circumstances attending it : but the client could not give the instructions with safety, if the facts confided to his advocate were to be disclosed. Barristers and attorneys, therefore,

to whom facts are related professionally, during a cause, or in contemplation of it, are neither obliged nor permitted, though they should so far forget their duty as to be willing to do so, to disclose the facts so divulged during the pendency of that cause or at any future time." The privilege is thus confined to professional employment, properly so called. Is a man, merely employed to put up an advertisement, an incompetent witness, because he happens to be an attorney at law ? Or suppose him to be a land agent, shall his testimony for that reason be excluded ? No. The communication must relate to a judicial proceeding. Is the sale of mortgaged premises under the statute, upon simple advertisement, such a proceeding ? There is neither Court, parties, suit, process, nor record. It is no more judicial than advertising a cargo of rum. True, the effect is a foreclosure. So a sale of my land divests my title, but the sale is not, therefore, a judicial proceeding. (He examined H.'s evidence, but as this was not deemed material by the Court, it need not be noticed here.)

If there was an abandonment, it was waived by the subsequent attempt to foreclose. But,

4. The foreclosure and sale was a mere formality, and utterly void, and without effect. Faulkner had no authority to insert the power of sale in the mortgage. A letter of attorney, to make a mortgage, does not imply an authority to insert a power of sale ; for a mortgage is complete without this. This power of sale and summary foreclosure was unknown to the common law, and is, to this day, without a precedent in England.(k) The Chancellor seems to rely on the practice at the Pultney land office,(l) but surely it requires no argument to show that this is not to form the law of the case. The question is the same as if it was the first mortgage ever taken in this form.

The general principle is, that an authority should be strictly pursued. This rule is laid down and illustrated by the cases cited in Com. Digest.(m) The power of sale does not pertain to the nature of a mortgage, and when first introduced with us, this power was contained in a distinct instrument. Reliance is placed by the Chancellor on the

(k) 2 Pow. on Mort. 1093. 1 id. 14 to 20. Croft v. Powell et al., Com. Rep. 603. 1C John. 196, per Kent, Ch. J. But see the late case of Clay et al. v. Willis, 1 Barn. & Cress. 364.
(l) Ante, 200.
(m) Attorney, (C.) 10, 11.

ALBANY,
Dec. 1823.

Wilson,
v.
Troup.

(n) Ante, 199.

(o) Martini
v. Coles et al.,
1 M. & S. 140.
(p) Nixon
v. Hyserott, 5
John. Rep. 58.
Gibson v. Colt
et al., 7 id. 390.

(q) 5 John.
59

(r) Ante, 201.

(s) Ante, id.

(l) Ante, id.

(u) Ante, id.
from 6 Ves.
797.
(v) Ante,
201, 2.
(w) Sug. on
Pow. 2 ed. 446,
449.

general words, " to do and perform all things necessary and lawful for securing the consideration money."(n) But these words were not meant to extend the power beyond a bond and mortgage, as such. They might as well be construed to authorize any personal collateral security. These general words relate to the premises—the subject matter, which is a bond and mortgage. They are confined to what is lawful in furtherance of the power previously and specifically conferred, which, indeed, is a matter incident to the power without this clause. Thus it comes back to the nature of the authority. The right of inserting a power of sale was no more necessary to its execution, than the right to pledge is to a factor. The latter has a power to sell, but this does not include a power to pledge the goods of his principal.(o) A power to sell lands does not imply a power to insert covenants of seisin, warranty, &c.(p) This was decided upon a principle directly applicable here, that " a conveyance or assurance is good and perfect, without either warranty or personal covenants ; and therefore they are not necessarily implied in a covenant to convey."(q) Now covenants are a much more striking requisite in a conveyance than a power in a mortgage; for if the bargainor is not seised, no estate passes. The case of *Liefe* v. *Sallingstone,* relied upon by the Chancellor,(r) turned upon a technical difficulty raised upon the word *dispose.* Nor is he borne out, by the decisions cited by him(s) in relation to leasing powers. In those cases, the attorney took the covenants, and who could object, or think of objecting to a covenant which he had executed with his own hand, because the attorney had no power to receive it ? The attorney received a covenant highly beneficial to his principal ; it was like an objection to the execution of a power to sell for 1000 dollars because the attorney sold for 2000 dollars. In *Roberts* v. *Dixall,* on which he also relies,(t) the attorney did less than what the power authorized, and the case proceeds upon the maxim that every greater includes the less. In the subsequent case of *Kenworthy* v. *Bate* cited by him, (u) the master of the rolls considered it so. The result of the subsequent cases to which he refers(v) as given by Mr. Sugden,(w) is the true distinction arising from all of them,

" that where a freehold interest is authorized to be appointed under a power, a different estate, less valuable, will be supported in equity."

5. But if the power was operative, the validity of the sale depended upon this, as well as the power under which the mortgage was made, being recorded before the conveyance was executed. The latter it expressly required by the statute.(*x*) The authority to foreclose is a special statute power, and must be strictly pursued.(*y*) The subsequent act of recording will not make the execution of the power good by relation.(*z*)

6. The nature of the mortgagee's interest, as connected with the power, is well defined, and has been very fully considered by this Court. The power is not a mere naked one, but coupled with an interest ;(*a*) and when Troup conveyed, the power was extinguished. If a mortgagee could convey the land, and yet reserve the power, he might defeat his own grant. The nature of an authority to convey real estate, is considered at large in Hargr. & Butl. note 298 to Co. Litt. 342 b. It is there said, that " those powers which are given to mere strangers, that is, to persons who were not owners of the land, at the execution of the instrument creating the power, and who do not take under it, either a present or future estate or interest in the land, are said to be *collateral* to the land :—Those which are reserved to the owner of the land, or to a person deriving under the instrument creating the power, either a present or future estate or interest in the land, are said to be relating to the land." The power in question was derived under the same instrument, is annexed to the estate, and, therefore, comes within the latter division of a power *relating* to the land. It is said in Powell on Powers, 26, that " An assignment of *totum statum suum*, or a total alteration of the estate for life, to which a power is appendant, destroys the power.(*b*) So the conveyance by Troup passed *his whole estate*, in those parts of the mortgaged premises conveyed.(*c*) There can be no doubt that Troup had the whole *legal* estate, which passed by his conveyance.(*d*)

*Van Buren.* We shall not dispute that the legal estate passed.

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

(*x*) 1 R. L. 374.
(*y*) Denning v. Smith, 3 John. Ch. Cas 344, 5.
(*z*) Hawkins et al. v. Kemp, 3 East, 410. Wright et al. v. Wakeford, 4 Taunt. 213. Doe v. Peach, 2 M. & S. 576. Doe v. Pierce, 6 Taunt. 402.
(*a*) Bergen v. Bennet, 1 Caines' Cas. Err. 15.

(*b*) Hard. 416. 1 Ventr. 226. Sand. on Uses, 226.
(*c*) Harg. & Butl. note 298 to Co. Litt. 342 b.
(*d*) Jackson v. Chase, 2 John. Rep. 84. Sanders' note, (1) to 1 Atk. 605. Jackson v. Delancy, 13 John. 539. Butler's note 96 to Co. Litt. 205 a. Sir Thomas Littleton's case, 2 Ventr. 351.

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

(e) Vid. 2
Bl. Com. 274.

(f) 2 John.
Ch. Rep. 252.

(g) Vid. 1
Caines' Cas.
Err. 13.

*Bleecker.* It follows, then, that the power must have passed with it. The same reason exists as that for the forfeiture of a particular estate by alienation. The conveyance is a renunciation of the connection and dependence which existed between the mortgagor and mortgagee.(e) If Troup had no legal estate, he was no longer mortgagee. This was the only character in which he could sell. No one in nature of a trustee can sell to, and buy himself, except a mortgagee. This he has done, or attempted to do. Strip him of his character of mortgagee, and it is all we ask. Whether he retains the power or not, is immaterial. If his legal estate is gone, his character was that of a naked trustee, his power is uncoupled from his interest, he could not buy, and the sale to him upon the foreclosure was absolutely void. The authorities to this point are all collected by the late Chancellor, in *Davoue* v. *Fanning.*(f) Nor does it vary the case, that only a part of the land was conveyed. If the power was gone as to part, it was gone as to the whole. The nature and object of this power is well explained by the present respondent, Col. Troup, and his colleague, the late Judge Benson, who were counsel for the appellants, in *Bergen* v. *Bennet.*(g) Take the rights of the mortgagee as there defined. He sold, in this instance, for the whole mortgage money due. This was as it should be; but how is he to do this, unless he retains the whole power over the whole land? What part of the land is to be sold, and how is the money to be applied? What would have been the safety of the bidder, had strangers been permitted to purchase? The right was embarrassed and entangled by the previous transfer, and bids are discouraged and suppressed. Troup was, indeed, not in a capacity to make a sale. It was a nullity, and the deeds passed nothing, either to Haight or Troup, and we are left in *statu quo.*

It may be said that the power passed to the grantees. If this be admitted, the condition of the respondents is not bettered by the concession. Their power has not been exerted. They have taken no part in the sale, either directly or indirectly.

Independent of strict law, the power should be consider- ed as gone in propriety and policy. Obstacles were thrown in the way of bidders, and there could not have been a fair sale. The purchasers were not safe. "A mortgagee is bound to pursue his power strictly; and although he may sell part of the land at one time, and part at another, yet he cannot clog and encumber the part that he sells, but must sell simply and unconditionally the whole interest as the same was conveyed by the mortagor."(h) The mortgagee should have kept the whole in the same situation as when the mortgage was first executed. Who would dare to pur- chase Troup's estate, broken and disfigured as it was ? These important objections were but little noticed in the Court below, for what reason we know not; but we are persuaded that had the Chancellor pursued the subject with his usual diligence, he could not have arrived at the result expressed by the decree.

7. The sale was not in good faith. It was not for the pur- pose of raising the money due upon the mortgage, but to protect the subsequent purchasers. Take the case men- tioned by Kent, J.(i) of a devise of land to executors, to be sold for payment of debts. Suppose them to sell under a title entirely distinct from their power, would they be at li- berty to sell again, merely in order to protect the title of the purchaser ? and not with intent to pay the debts, as requir- ed by their authority ? The two cases are analogous; and the distinction is fully supported by the statute(j) giving the mortgagee a right to purchase, which declares that such purchase, shall not be defeated for that reason, "provided that it was, in every other respect regular, fair, and with good faith." Was this sale within that proviso ? Was it for a purpose contemplated by the act ? Was it "fair?" The interest of the mortgagee was to sell at as small a price as possible; whereas the power was conferred for the reason that the mortgagee is interested to bid up to the full amount of the mortgage. It is for this reason alone that his case is made an exception to that of ordinary trustees. It was said by the Chancellor, that we had not made the point relating to the fraud. We answer that this was not necessary. We

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

(h) 1 Caines
Cas. Err. 18,
per Kent, J.

(i) 1 Caines
Cas. in Err
16

(j) 1 R. L.
375, s. 10.

apply to redeem. We are answered by the sale. We reply that it is an insufficient bar, because unfair and in bad faith. It was not necessary for us to attack, by the bill, what we possibly never knew. We may meet it upon the general replication. The charge of unfairness is confirmed by the result. The bid was $350 only. No laches—nothing short of a deed of confirmation could validate such a sale.

Again: the mortgage was extinguished by the sales. Troup should have given us credit for the sums which he had received of the purchasers. Yet he sells for the whole sum secured.

It was said by the Chancellor, that our ground of objection is too broad—that it goes to deny the right of foreclosure even in equity. True. In answer to a bill, we might have shown the departure of interest, and it would have been equally available both in equity and at law. The mortgagee could not have taken a decree of sale for the whole upon a true bill, even if it had been taken *pro confesso ;* for you cannot take a decree differing from the statement in the bill. If there was a right of foreclosure in equity, it should have been pursued there; and should not weigh against our objection to the statute foreclosure, any more than if there had been no power of sale, or the mortgagor had been under 25 years of age. A Chancery foreclosure would have been much more advantageous to the mortgagor. It would have given him more time to answer and make his defence, and raise the money upon a decree against him. The precise land would have been sold which is properly the subject of the sale. The tenants would have been brought in, and there would have been a fair sale upon a safe title, at the full value. Here Troup still retains a very considerable balance on the bond, which he may enforce by an action.

It is settled, that if there be any unfair conduct in the mortgagee, the Court will open the foreclosure.(k) This will be favored. Powell after stating a variety of cases, in which foreclosures have been opened, says,(l) "Except in the instance already mentioned, I do not find that any rules have been, nor do I apprehend that any can be laid down by the Courts of Equity, as to the exercise of their jurisdic

(k) 2 Pow.
on Mort. 1066,
7, 8.
(i) Id. 1079.

tion in opening foreclosures, either with respect to the time, which shall be considered as a bar, or to the particular circumstances which will entitle a suitor to this interposition of the Court ; for cases of this sort embrace such a variety of considerations, and are frequently so complicated in their nature, that each depends, in a great degree, upon its own combined circumstances, and may be rather considered as an instance of the fact, that the Courts will interfere to open a foreclosure, than as a general rule as to the circumstances in which relief will be given." A foreclosure has been opened after 16 years, upon very slight circumstances of unfairness.(*m*) The Chancellor would not have sanctioned this sale upon a bill of foreclosure, for the very reason that the purchaser would not have been secure, and because the mortgagor had been embarrassed, and his rights impaired by the sale.

(*m*) Id. 1080, and the cases there cited.

WOODWORTH, J. How were the mortgagor's rights affected ? He might have tendered the mortgage money to Col. Troup, notwithstanding the sales.

*Bleecker.* True. But he might also have refused to receive it, and put the mortgagor to his bill to redeem against this multitude of purchasers, or any greater number. The mortgagor ought not thus to be embarrassed and delayed in his remedy.

*M. Van Buren*, for the respondents. This suit is a serious attack on the interests of a great number of men, upon merely technical grounds. They have purchased in perfect good faith, and the claim of the appellants is not entitled to the favor of any Court, especially a Court of Equity. Before the possessors are disturbed, the legal right should be most clear against them. I did not suppose it in the wit of man, to cast a shade of doubt upon their title.

The appellants are first met by the statute foreclosure. This they assailed before the Chancellor, upon the ground that it wanted form and regularity. These being amply proved, and that the mortgage was for no more than the fair consideration money, they now attack us, first, because

there was no authority in Faulkner to execute the power of sale. This authority was to receive a conveyance, and execute a bond and mortgage, pursuant to a previous, conditional, executory contract between Williamson & Wilson. There is no doubt that a good and sufficient mortgage was intended, and an express clause was inserted, sanctioning every act necessary to the complete security of the purchase money. Was the mortgage, accompanied with a power of sale, an excess of authority?

There is no doubt that a power must be construed according to the intent of the party, to be deduced from the subject matter, which was a mortgage. What did the parties mean when they used the term? As early as 1788, these powers of sale had multiplied to a great extent, and many titles depended upon sales made under them. An act(1) was accordingly passed in that year, giving effect to those sales, which has been in force ever since. The act had existed for 12 years, and the practice of inserting the power of sale in use for a much longer time, when this authority was given to Faulkner, who was to do the buisness with a land

1) Act of Feb. 26, 1788, s. 7.   2 Jones & Varick, 268.   This section is as follows:

" And whereas many real estates are held under sales made by mortgagees, who were authorized by the mortgagor or mortgagors to make conveyance of the same in fee, for the payment of the debt or demand secured by such mortgage, and to return the surplus of the purchase money·to the mortgagor or mortgagors; and as many inconveniences may arise, vexatious suits be promoted, and *bona fide* purchasers ruined, if such estates should be redeemable in equity; therefore, be it further enacted by the authority aforesaid, that no *good* and *bona fide* sale of messuages, lands, tenements, or hereditaments, made or to be made by mortgagees or others authorized thereunto, by special power for that purpose, in due form of law, from him or them, who had the equity of redemption, shall be defeated to the prejudice of the *bona fide* purchasers thereof, in favor, or for the advantage of any person or persons claiming a right of redemption in equity; provided always, that nothing in this act contained, shall be construed to prejudice any other mortgagee of the same messuages, lands, tenements, hereditaments, or any part thereof, whose title accrued prior to such *bona fide* sale, or any creditor to whom the mortgaged premises, or any part thereof, was before bound by any judgment at law or decree in equity."

office, whose uniform custom required the insertion; the office of the Pultney estate, established for the sale and settlement of a million of acres, which had been in operation for several years, and whose rules must, therefore, have been generally known. Acting in reference to all these considerations, is there room to doubt for a moment, that the usual mortgage was intended? Sugden says,(*n*) that " in considering the extent of a power, the intention of the parties must be the guide. Thus, on the one hand, a power limited in terms, has, in favor of the intention, been deemed a general power, whilst, on the other hand, a general power in terms, has been cut down to a particular purpose." The words need not always be strictly pursued. " Under a power of appointment, the donee may either appoint absolutely, or may reserve a power of revocation, although not expressly authorized to do so by the deed creating the power."(*o*) The liberality with which powers are construed, to further the intent of the parties, is fully illustrated by the cases cited and summarily stated by Sugden on Powers, 1 Am. from 4d Lond. ed. 438, 439, 445, 459, 461, 478. At page 526, 7, an instance is given of construing the words of a power by the custom of the country. The Court are also referred to the same book, 549, 554, 610, 626, 628, 630, 631, as containing cases in support of the principle, that a general power must be construed in reference to the law and custom, and that the best security authorized by law or custom, should have been given by Faulkner.

Again; he was to do " all things *necessary* and lawful to secure the consideration money." It was necessary to give the power of sale, and Williamson had a right to require it. This was according to the custom of the office.

But is Wilson to be tolerated in saying that the power of sale is void, after having, by his attorney, received a deed as a consideration for that very mortgage which contains the power, and now, in the same breath, claiming to enforce it? He was certainly bound to give back the deed, before he could be heard to object against this power. By receiving the deed, he ratifies the power. He claims under a transaction, which he wishes to be holden void, for his purpose, on one

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

(*n*) Sugden on Powers, 459, 1 Am. from 3d Lond. ed.

(*o*) id. 310, 311, 321, and the authorities there cited.

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

(p) Holbrook v. Finney, 4 Mass. Rep. 596. Stow v. Tifft, 15 John. Rep. 463, and vid. 13 Mass. Rep. 55.

(q) Adams' Rep. 75.

(r) 2 Sch. & Lef. 267. Ld. Redesdale, citing Ld. Roslyn, M. S.

(s) Bac Ab. Leases, &c. (B)

(t) Whistler v. Webster, 2 Ves. Jun. 367.

(u) 1 Caines' Cas. Err. 17, 18.

hand, and valid for the same purpose on the other. It is the common case, where a party shall be put to his election in a Court of Equity, to say whether he will give up his claim *in toto*, under the instrument, or suffer the whole to stand. Both the deed and mortgage are, for this purpose, to be considered as one entire instrument.(p) This point was decided expressly by the Supreme Court of New Hampshire, who held that an infant should not avoid his mortgage for nonage and yet hold the land.(q) "No person puts himself in a capacity to take under an instrument, without performing the conditions of the instrument; and they may be express or implied."(r) An infant must elect, on coming of age, whether he will continue to occupy under a lease. If he continue, he is liable for all the rent incurred during his minority.(s) This is the settled and familiar doctrine in relation to a claim under appointments by a will.(t) Yet Wilson holds the deed, and in the same breath claims to disaffirm the mortgage. The attempt is a violation of common justice and honesty. He should be driven to his election. The deed was delivered on the strength of the mortgage. If that fails, the deed should fail with it, and the original owner be remitted to his rights. Suppose a failure to pay the consideration money under the original contract, and yet a deed executed, it would be voidable as being without consideration, or founded on mistake.

Being then a valid power of sale, it is objected, that the foreclosure was not regular ; but every objection is abandoned, except that which relates to the non-registry of the original power and the power of sale. It was not necessary that the former should be recorded. No statute or principle of policy requires it, as to the mortgagor. As to the latter, the recording was necessary only for the protection of the purchaser. Kent, J. says, in *Bergen* v. *Bennet*,(u) (and this Court concurred with him,) that " the only use in recording the power of sale, is for the benefit of the purchaser ; and it does not lie with the mortgagor to object to the validity of the sale by reason of that omission. He can have no concern or interest to be affected whether it be recorded or not."

But it is said our authority to sell was gone by our deeds to different persons, conveying a part of the premises. This is founded on a misapprehension of the rule, that wherever a subsequent exercise of power by the donee will defeat his previous grant, there it shall be holden inoperative, or to have been taken away by the first act. Take the case of a tenant for life, under a marriage settlement, with power to revoke the estates created by the settlement, and limit them to other uses. The tenant for life departs with his estate, and afterwards attempts to revoke under his power. The effort is nugatory, because in effect it would operate to defeat his previous grant. But in this case, our acts of partial sale did not subvert the relation of mortgagor and mortgagee. It is well settled, that the mortgagee can do no act prejudicial to the mortgagor's right of redemption; and the moment we purchased as the agent of the Pultney estate, this enured to confirm the sales we had made. *Jackson* v. *Bull(v)* was a case substantially analagous to the present, so far as the confirmation of a previous sale is in question.— Then these conveyances, intermediate the mortgage and foreclosure, were inoperative against the mortgagor; but the foreclosure protects our grantees, and avoids any objection from all quarters. This is a satisfactory answer. It was upon this, among other grounds, that the power was held well executed by Ld. Mansfield, in *Ren* v. *Bulkeley.(w)* That case was much like the present. The leasing power was coupled with a life estate, which was granted away to pay an annuity for the life of the tenant, reserving a surplus. He then goes on to execute his leasing power, which was objected to, on the ground that his power passed with tne grant; but, per Lord Mansfield, " Certainly, where the whole life estate is conveyed away by the intention of the parties, the power must be at an end, and cannot be afterwards executed, to the prejudice of the grantee; but the conveyance here was only to let in a particular charge, subject to which the rents and profits still belonged to Ld. Onslow; and the lease could not prejudice the security, nor the remainder-man, for the best rent must be reserved. It would, therefore, be contrary to the intention of

(v) 1 John. Cas. 81.

(w) Dougl 292.

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

all the parties, to hold that the power was extinguished by the conveyance to Briscoe." Thus the destruction of these powers depends upon the justice of the object to be promoted. The principle is the safety of the grantee. Another principle (and which is deducible from the case last cited) is, that where the act set up as the ground of destruction, is done in good faith, to preserve the estate granted, a Court of Equity will not decree a destruction. Here was no prospect of a redemption. Many years had elapsed without an offer to redeem. The equity of redemption was treated as abandoned, and the exercise of the power was done in confirmation of the title of the grantees, and in the most perfect good faith. The principle of destruction is one of forfeiture for fraud and injustice. Ours is a fair and innocent exercise of the power.

This is not a case in which the sale of the estate destroys the power. Though in legal privity with the estate, it is not so appendant as to be destroyed. It is a power in gross.(x) The English cases do not exactly govern, because this power is not known there. Here are two distinct interests. The mortgagee is the owner, as against the mortgagor. He may bring ejectment, recover possession, or sue for the rents. So may his heir. Another interest is in the power of sale, as a security for the debt, which he may or may not exercise at his election. This is a personal chattel, which goes to the executor. To either right he may resort. They are distinct and separate, and the transfer of one does not affect the other. It does not follow, because they are in privity, that the power is appendant and destroyed by a transfer of the legal estate. If so, a mere entry would destroy it, which cannot, I think, be pretended. But, at any rate, no case has been or can be shown, in which the transfer of a portion of the estate only, destroys the power. The language of the books and the cases cited, is *totum statum suum*. All the cases are of total alienations. A forfeiture is insisted upon—a thing odious in the eye of a Court of Equity—and the appellants must bring themselves strictly within the rule under which they claim.

(x) Vid. Sug.
on Powers, 1
Am. from 3d
Lond. ed. 46.

If it is a destruction, *pro tanto*, the objection then could not upon any principle, reach beyond the parts conveyed. The most that could be claimed is, that it should transfer the power to our grantees. Every assignment of a mortgage would otherwise destroy the power. It was then a mixed interest, part in the Pultney estate and part in our grantees. Here has been a foreclosure. The mortgage was never technically assigned; and the foreclosure was rightly in our name. But it is immaterial in whose name it was. The notice of sale was as effectual to apprize the mortgagor of the proceeding, as if it had been signed by all the grantees. It does not lie with the former to object. It is a right which, if it exists at all, is confined to the grantees, who do not object. Nor has any exception been taken to the proceedings, at any stage of the cause, on account of the non-joinder.

It is said that the foreclosure was not with a view to collect the money. Is the objection on this ground serious? Are all the purchases which have been made, to confirm titles, thus to be overturned? A purchase may be made for any legal object.

*R. Sedgwick,* in reply. Some positions advanced on the other side, require, on the part of the appellants, a brief recurrence to first principles. Our ancestors have sought to strengthen, in every possible way, their right to the soil, and the rules relative to real property, growing out of this propensity, have descended upon us. A man has the fee: how is he to be divested of it? Certainly in no other way than by a conveyance or adverse possession; for, in this country there is no corruption of blood by attainder. The estate of a mortgagor is not an exception. How, then, is our land to be taken away? It is said, on two grounds. 1. Abandonment. 2. A statutory foreclosure. If we sweep away these, there is an end of all declamation about the rights of these purchasers. Hard cases make most injurious precedents. The respondents, who purchased of the Pultney estate, acted with open eyes. Our title was upon record. If they chose to act upon fancy or idle humor, that

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

Wilson had abandoned his title, are they, therefore, to be favored?

WOODWORTH, J. I am sure the ground of abandonment cannot be seriously contended by the respondents.

*Sedgwick.* Perhaps not. But it has been sought to give it some importance, when taken in connection with the sales which it is said the foreclosure was designed to protect. Hence we thought it our duty to reply.

SUTHERLAND, J. I am convinced there is nothing in this ground of abandonment.

WOODWORTH, J. It appears to me the great question is, whether the equity of redemption has been regularly and legally foreclosed.

*Sedgwick.* In reference to the question of Haight's competency, I shall barely refer to two cases, to show that he was not acting professionally, within the rule relied on to exclude him. One is that of *Wilson* v. *Rastall,*(y) where Buller, J. says, " though it was said the defendant consulted him, (the attorney,) in his profession, as a confidential person, the meaning of that was, that as he was more conversant with business of this kind, than those who were not of his profession, the defendant consulted him but did not employ him as an attorney." *Jackson* v. *Dominick,*(z) shows that a statutory sale or foreclosure is not a judical, or any thing of the nature of a judical proceeding.

Faulkner had no authority to insert the power of sale, unless this was essential to the nature of a mortgage. It was clearly not so at common law, nor is it considered so by the statute. The late revisals do not contain the recital of the act giving effect to a sale under a power. This may, however be found in 2 Greenleaf's ed. of the laws, 101, s. vii.(a) This does not contemplate the power as a part of the mortgage. It may be separate. It is called there a " special power." As to the general clause in Faulkner's power,

(y) 4 T. Rep. 753.

(z) 14 John. 443.

(a) It is there as in Jones & Varick, cited ante, 216, (z).

here was one still more broad in *Nixon* v. *Hyserott*.(b) The attorney was authorized there "to execute, &c., such conveyances and assurances in the law, &c., as should or might be needful or necessary, according to the judgment of the said attorney," giving a broad latitude of discretion. Yet an attempt to bind the principal by covenant was holden void.

WOODWORTH, J. The covenant there created a liability beyond the ordinary effect of a conveyance.

*Sedgwick.* This power of sale is equivalent to an additional liability. When one buys land, he certainly means to get a title. If he gets none, the purchase money should be paid back. This case is much stronger than the one cited. A summary power of foreclosure is given. Faulkner might as well have inserted a covenant not to redeem at all. The custom of the Pultney land office is nothing. The law of the state is not to be manufactured there. Nor does the statute sanction such a power as seems to have been supposed by the Chancellor. It merely regulates, and declares the effect of a sale under it, when the party thinks proper to give it. I will only say, as to the cases cited by the Chancellor to this point, that the acts performed were within the terms of the power, and his reasoning is precisely the contrary of what it should be from his premises. The case cited by him from 6 Vesey,(c) gives the true result of the cases, which go upon the maxim, *omne majus in se continet minus.* A power to convey a fee gives power to convey a less estate. The Chancellor supposes that, because there is nothing in Faulkner's authority expressly excluding the power of sale, it is therefore included : The reverse is correct. The authorities(d) all show the rule, that a special authority should be construed strictly, to be one of the greatest rigor. In *Doe* v. *Peach*, the appointment was required to be signed and sealed, &c., and because the *signing* was omitted, it was holden void. The attorney cannot transgress his power one hair's breadth, and will not be allowed to do so even by a Court of Equity. The case cited(e) of a power construed by custom, was where the words received their meaning

ALBANY, Dec. 1823.

Wilson v. Troup.

(b) 5 John 58

(c)Ante, 201
(d) Co. Litt. 113 a. Fenn v. Harrison, 3 T. R. 757. Gibson v. Colt, 7 John. 390. Hawkins et al. v. Kemp, 3 East, 410. Wright v. Wakeford, 4 Taunt. 213. Doe v. Peach, 2 M. & S. 576.

(e) From Sugden on Powers, 1 Am. from 3d Lond. ed 526, 7.

ALBANY, Dec. 1823.

Wilson
v.
Troup.

from this source ; as " clear yearly value," did in that case ; not as here, where the terms are known and defined by the common law.

The execution of a power may be good in part and void in part. " Where there is a complete execution and some-thing *ex abundanti* added, which is improper, there the execution shall be good, and only the excess void."(*f*)

(*f*) Id. 549.

The acknowledgment of the power of sale in Pennsylvania was void.(*g*) This is not denied, but the authority of *Bergen* v. *Bennet*,(*h*) is relied upon, where Kent J. thought no record necessary as to the mortgagor. This was not the question in that case : It was, whether the place of record-ing was proper, and held that it was. All that Kent, J. says as to the necessity of recording the power at all, was, therefore, *obiter*. The party purchases at his peril, and must look to the regularity of the proceedings.(*i*)

(*g*) Jackson v. Wickoff, 1 John. Rep. 498.
(*h*) 1 Caines' Cas. in Err. 17

(*i*) Jackson v. Clark, 7 John. 217

The power was gone by the conveyances from Troup to the other respondents.

[WOODWORTH, J. Do you mean that the power itself was gone, so that no sale could be made under it by any one.]

*Sedgwick.* This is what we contend.

[WOODWORTH. J. What sort of estate passed by the conveyances from Troup ?]

*Sedgwick.* That I am going to consider. It is said, that this is a power in gross. It is not very material, whether it be so or not. It is enough that it is a power coupled with an interest, an done relating to the land within the note 298 to Co. Litt. 342 b. If the *donee* convey *totum statum suum*, as he has done in this case, the power is gone ; and Troup had no power to sell a second time. In *Ren* v. *Bulkeley*,(*j*) cited against us, Lord Mansfield says, " It is contended that, by granting away his life estate, he extinguished the power. Certainly where the whole life estate is conveyed away by the intention of the parties, the power must be at an end ; and cannot be afterwards exercised to the prejudice of the grantee." Grant me that Troup could not sell as against the grantees, and it overturns the whole doctrine of the oth-

(*j*) Dougl. 292

er side. I care not whether he conveyed or reserved the debt. The grantees would hold the legal estate in trust, for the one beneficially interested. Troup could not sell as against the grantees : could he then sell for them, and with the view to protect their title?

[WOODWORTH, J. Might they not have joined him in the sale?]

*Sedgwick.* It is enough that they have not done so. Granting that they might have joined in a sale for their benefit and that if he sold at all, it must have been for their benefit, they have never authorized him to do this. They entered, relying upon the good faith and resources of the Pultney estate.

But suppose the grantees had given authority: what kind of sale is to divest our estate? The statute contemplates a fair sale on six month's notice,(k) at which all the world may bid. What kind of sale is that at which the mortgagee, or these individuals alone, are to bid for the private purposes of the latter? They never would authorize him to sell their rights to a stranger. The authority must have been for their benefit, not to sanction a sale in fair market. This is said to be for a very equitable purpose; and it is conceded that, in ordinary cases, one cannot sell after he has departed with his power, but an exception is alleged in favor of a sale to protect grantees. Are there no other rights in this case? Has the mortgagor none? May he not contend for a strict statute sale?

(k) 1 K. & R. 482, s. 6.

[SUTHERLAND, J. The proceeding to foreclose, by a general advertisement, conceded that the previous conveyances were nothing. The argument for the respondent concedes the same, and that the bidding was open to all the world.]

*Sedgwick.* We do not join in that concession. If the sale may be made in protection of the grantees, it is stepping beyond the statute. Troup having extinguished the power to sell in payment of the debt, he can no longer execute the statute.

ALBANY,
Dec. 1823.

Wilson
v.
Troup

[WOODWORTH, J. Were not the purchasers from Troup assignees of the mortgage *pro tanto ?*]

*Sedgwick.* If so, they are assignees still ; for they have never joined in the foreclosure. They are strangers to the proceeding. But if they had joined, it should have been in a general sale, for the purpose of discharging the mortgage ; not merely to benefit themselves.

[SUTHERLAND, J. What right have you to ask for whose benefit the sale was made ? You had a right to redeem before the sale. The biddings were open upon a general advertisement. If the conveyances by Troup operated as a technical extinguishment, that is one thing ; but if otherwise, I do not see the force of the inquiry, for whose benefit the sale may have been made, or to whose use it may enure ?]

*Sedgwick.* If the sale was not with intent to pay the bond, it was fraudulent and void. The statute contemplates a sale for no other purpose. The covenant is to pay the money, or that the mortgagee may sell according to law, rendering an account of the overplus moneys. The whole covenant and power is violated, if the sale be for any other purpose.

Again : Under a purpose of this kind, clogged and embarrassed as the right was by the previous partial transfers, there was no fair chance. The trust was to sell, giving every fair opportunity to purchasers, in order that the estate might fetch its full value.(*l*) Every thing calculated to prevent competition renders the sale void.(*m*) Suppose Troup had published his purpose in the advertisement. This question brings it to the test. Appearances and formality are vain, unless the purchase be *bona fide*.(*n*)

It is said that the objection grounded on the destruction of the power can, at most, reach only a part of the premises, because it cannot be affirmed of Troup, that he has sold *totum statum suum*. But this phrase, as used in the cases, applies to the interest, not the land. The *whole* of his estate is, in this case, gone in *part* of the land.

(*l*) *Denning v. Smith*, 3 John. Ch. Rep. 344.
(*m*) *Jackson v. Crafts*, 18 John. 110.
(*n*) 14 John. 443.

Woodworth, J. The appellants filed their bill in the Court of Chancery, to redeem certain lands which William Wilson, by his attorney, Daniel Faulkner, mortgaged to Charles Williamson, on the 21st October, 1796. Several questions are raised as to the right to redeem. It is insisted by the respondents, that there was an abandonment by Wilson. In looking into the case I have not discovered any facts that warrant this conclusion. Dugald Cameron testifies, that the lands having been abandoned, Williamson took possession in 1800, treated the property as his own, caused a re-survey to be made, and sold parts to various persons. Wilson informed him he was very much embarrassed in his circumstances. It was the understanding at the land offices, that the mortgage was not to be collected, but the estate was to take back the land—that it had been so considered after Troup, succeeded to the agency. This proof is altogether equivocal and unsatisfactory. The subsequent transactions clearly evince, that Wilson did not consider his right abandoned, nor did the respondents deem it safe to rest on that ground. The letter of James Reese, dated August 10th, 1802, called on Wilson to make payment of the land; or that decisive measures would be taken. The respondent, Troup admits, that in 1807 he applied to him for a release of the equity of redemption, which he declined unless he received compensation. In 1812, a tender of the money due was made and refused. I lay no stress on the circumstance that the original deed was found in the office of the respondents. I presume it had lain there from the time it was executed. There is no proof that it was ever actually received by Wilson. It is not necessary to dwell on this part of the case. There is no foundation for insisting on the extinguishment of the right to redeem.

It is contended by the appellants, that Faulkner, who executed the mortgage, as Wilson's attorney, had no authority to insert a power of sale. The power was general, to seal, deliver and acknowledge a mortgage to Williamson, thereby ratifying all that his attorney should lawfully do in the premises. Wilson resided in the state of Pennsylvania, and probably may not have been acquainted with the sta-

ALBANY, Dec. 1823.

Wilson v. Troup.

Abandonment not made out.

Whether Faulkner had authority to execute power

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

Power to exe-
cute mortgage
will not autho-
rize execution
of instrument
of different ef-
fect.

Clause of sale.

Intent deriva-
ble from cir-
cumstances.

In construc-
tion of con-
tracts, situa-
tion of parties
and subject
matter to be
considered.

tute remedy to foreclosure. He undoubtedly has a right to insist that the term "mortgage," which is of known and definite signification in the law, cannot be satisfied by substituting another instrument, differing in its legal effect and operation. Had this been done, the case would have fallen within the principles laid down by the appellant's counsel, and supported by authority, that where an attorney is authorized to sell and execute conveyances, he has no power to insert a covenant of seisin, the power to sell not giving a power to warrant the title of the thing sold. (5 John. 58. 7 John. 390. Com. Dig. Attor. C. 11.) It does not appear to me that there has been any departure from the power. The insertion of the clause to sell, does not confer on the mortgagee a greater security than was intended. It applies solely to the remedy. It does not impair any right of the mortgagor.

It will be remembered, that by the covenant of Williamson, in 1795, *a good and sufficient bond and mortgage* were to be given on receiving a conveyance. Cameron says, that two land offices were established: one at Bath—another at Geneva: That the existence of the offices was well known in Pennsylvania, from whence the first settlers came : That it was the invariable practice to take mortgages with the clause authorizing a sale pursuant to the statute. When Williamson speaks of a mortgage, it must be intended he meant a mortgage in the form used at his offices. This cannot be doubted.

Faulkner must have understood the contract, as requiring a mortgage in the usual form. It would be a violation of the presumed intent of the parties, to construe it otherwise. When Wilson executed the power to Faulkner, the year after, to carry this covenant into effect, what was intended ? A security corresponding with the forms then used and approved. Williamson, under the covenant, had a right to say, the mortgage shall contain this clause. Such was the understanding between him, Faulkner, Hall and Freeland.

It is well settled, that in the construction of all contracts, the situation of the parties, and the subject matter of their transactions may be taken into consideration, in determining the meaning of any particular sentence or provision. Extrane-

ous evidence is admissible, so far as to ascertain the circumstances under which the writing was made, and the subject matter to be regulated by it. *Sumner* v. *Williams*, 8 Mass. 214. *Fowle* v. *Bigelow*, 10 Mass. 384. *Whallon* v *Kaufman*, 19 John. 104.) Apply these principles to the case before us, and it cannot be well questioned that a mortgage, with a clause authorizing a sale under the statute, was no more than a fair compliance with the covenant. If this be correct, I think it follows that Wilson, afterwards acquiring an interest in the contract, and coming forward to fulfil it, cannot vary the terms. He could not require a deed, unless the mortgage offered satisfied the intent of the original contracting parties. When he uses the same terms as in the previous covenant, they must be understood in the same manner.

It is further objected, that the power of attorney was not legally recorded, before the conveyance for the sale was executed. The power was first proved before Waterhouse, a Master in Chancery, in 1809. He was employed to go to Pennsylvania to take the acknowledgment. This is, I think, *prima facie*, evidence that it was taken without this state. But it was afterwards proved and recorded, in 1812, subsequent to the deed of conveyance given on the sale, and the question is, whether it lies with the mortgagor to raise the objection. The *sale* is not affected, although the power has not been recorded. This provision is manifestly for the protection of the purchaser. It must be indifferent to the mortgagor. He has no interest to be affected by it, and cannot object. In the case of *Bergen and others* v. *Bennet*, (1 Caines' Cas. in Err. 17,) Kent, Justice, in delivering the opinion of the Court, says, " the omission to record the power will not affect the sale—that it does not lie with the mortgagor to object to the validity of the sale, by reason of that omission." This, however, was not the point then before the Court. The question was, in that case, whether recording the power in the book of mortgages, would satisfy the words of the act, which requires it to be recorded as deeds and conveyances usually are. Although the authority cited may be regarded as an *obiter dictum*, I am inclined to think it a correct exposition of the statute.

*Margin notes:*

ALBANY, Dec. 1823.

Wilson v. Troup.

This rule applied.

Whether power properly recorded.

Sale good tho power not recorded.

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

Whether
mortgagee,
having con-
veyed part,
can foreclose.
Objection.

Whether
Troup could
foreclose in his
name only.

Statute fore-
closure equi-
valent to one
in equity.

All parties
interested,
should unite.

Mortgagee
conveys;
grantee is not
assignee; and
need not be
party.

Mortgagee
purchases up-
on foreclosure,
his grantee
protected by
estoppel.

Mortgagor
deemed seis-
ed.

The next objection against the validity of sale is, that the mortgagee having conveyed parts of the mortgaged premises in fee simple with warranty, cannot proceed to sell under the power. If I rightly understand the force of this objection, it is, that the mortgagee, having released and conveyed a part of the land, cannot solely, without noticing the rights of the persons to whom he has conveyed a part, foreclose the mortgage. To say that a mortgage could not be foreclosed, by making all parties in interest parties to the foreclosure, would be a proposition altogether untenable. I will therefore inquire whether it was not competent for Troup, as administrator, in his own name solely, to advertise and sell. The power authorizes the mortgagee, his heirs, executors, administrators and assignees, to sell the premises at public auction. A statute foreclosure is equivalent to a foreclosure and sale under a decree of a Court of Equity, and cannot be defeated to the prejudice of a *bona fide* purchaser, in favor of a person claiming redemption in equity. (10 John. 185, *Jackson* v. *Henry*.) It is undoubtedly necessary that all parties in interest unite. (1 Brown's Ch. 368. 2 Pow. on Mort. 285.) But it is an interest in the mortgage that is intended. If the mortgagee, under a mistaken notion, that he is absolute owner, grants and conveys the lands mortgaged, in fee with warranty, the purchaser does not come in as assignee of the mortgage ; his purchase has no reference to it, and consequently he is not entitled to be made a party in a bill to foreclose. His title is taken subject to the mortgage, and liable to be defeated, if the premises are redeemed. If the mortgagee is the purchaser at the sale, then his previous grantee would be protected on the ground of estoppel, as the mortgagee could not claim in opposition to his deed. (12 John. 201. 13 John. 316. 14 John. 193. 1 John. Cas. 81.) In point of fact it never was intended that the grantees of Troup should take as assignees. The mortgage was entirely out of the question, in the view of the parties. The mortgagor, notwithstanding the mortgage, is deemed seised, and is the legal owner of the land, as to all persons except the mortga-

gee, and his representatives. (*Hitchcock* v. *Harrington*, 6 John. 290.)

In, *Runyan* v. *Mersereau*, (11 John. 534,) it was held, that at law and in equity, a mortgage is a mere security for money. The mortgagee has but a chattel interest, which will pass by delivery without writing. In *Jackson* v. *Curtis*, (19 John. 325,) it was held, that the mortgage is a mere incident to the bond, as personal security for the debt, and that an assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered in law as a nullity. This case fully proves, that conveying parts of the mortgaged premises can have no effect upon the mortgage, because had it been an assignment in form, nothing would pass; for the debt due on the bond, to which the mortgage is incident, was left untouched.

From this examination, I am satisfied it is not competent for the appellants to object, that a part of the land had been conveyed previous to the sale. If the grantees from Troup had acquired an interest in the mortgage, then, indeed, I apprehend the objection would have been well taken. It then would appear, that all the persons interested in the mortgage, had not joined in the notice of sale. The act contemplates, that the notice be given and the sale made by the mortgagee or others thereunto authorized. If the mortgagee has assigned all his interest, notice must be given by the assignee. If a part of the bond and mortgage is assigned, the mortgagee and such assignees are the proper parties. I think it follows, that if a mortgagee, solely, undertakes to give notice and sell, when other persons are interested as assignees, the regularity of such proceedings cannot be supported. The objection here falls to the ground; for Troup, as administrator, was exclusively the representative of the mortgagees, who alone held the interest in the security. I concur in the opinion of the Chancellor in saying, that the sales by the mortgagee could not, upon any reasonable principle, deprive him of the right of foreclosing the mortgage, nor could they prejudice the right of the mortgagor to redeem. They created, of themselves, no obstacle to the right of redemption. If the

ALBANY, Dec. 1823.

Wilson
v.
Troup.

Mortgage a mere security; A chattel interest, and will pass by delivery. Is incident to bond. Assignment of interest in land without debt, a nullity.

All persons interested in mortgage should join in notice of sale. Assignee of whole interest should give notice. Assignee of part should join mortgagee.

Partial sale cannot prejudice right of mortgagor.

ALBANY,    mortgagor was entitled to redeem, he could recover the
Dec. 1823.  possession, as against those purchasers, equally as well as

Wilson     he could recover it against the mortgagee himself.
v.
Troup         In the view I have taken, it becomes unnecessary to dis-
cuss the question, whether the disclosure by Haight ought
to be considered confidential as between attorney and cli-
ent.

Decree should  My opinion is, that the decree of the Chancellor be af-
be affirmed  firmed.

The question.   SUTHERLAND, J.   The question presented by this case
is, whether the equity of redemption of the mortgagor has
been legally foreclosed.   It is contended, on the part of the
appellants, that the foreclosure is illegal, on the following
grounds:

1. That Faulkner, who executed the mortgage as Wilson's
attorney, had no authority to insert a power of sale under
the statute.

2. That Faulkner's power of attorney was not legally
recorded before the sale under the mortgage.

3. That the mortgagee, or his assignees, having sold and
conveyed parts of the mortgaged premises, in fee simple
with warranty, before the foreclosure, could not subsequent-
ly foreclose and sell under the power.

4. That the sale was not made for the purpose of col-
lecting the money due on the bond, and was, therefore,
void; and that the purchase was made by Troup as trustee,
and not mortgagee.   I shall very briefly consider each of
these objections in its order.

Whether     1. The power of attorney from Wilson to Faulkner, em-
power      to  powered him to receive a deed from Williamson, for the land
Faulkner, au-
thorized  him  purchased, and to sign, seal, deliver and acknowledge *to the*
to give a mort-  *said Williamson, a mortgage or mortgages of said land,*
gage  with  a
power of sale,  together with a bond or bonds, for the consideration money,
and summary  *and to do and perform all things necessary and lawful to*
foreclosure.  *the obtaining a title to the said land, and securing the*
*consideration money therefor, to the said Williamson.*

Mortgage      That a mortgage may be made, without containing a pow-
good without
power of sale.  er to the mortgagee to sell in default of payment, there is

no doubt. Such power is not usually contained in English mortgages ; and they have no statutory provision regulating sales in pursuance of them.(o) If, then, it be a just rule of construction, as applicable to powers of attorney, that no authority is to be deemed to pass by them, but such as the terms used necessarily import, in their most restricted legal sense, it would, perhaps, follow, that an authority to mortgage would not authorize the sanction of a power to sell.

But I apprehend such is not the rule of construction by which powers are tested. Sugden on Powers, 459, lays down the rule thus : " In considering the extent of a power, the intention of the parties must be the guide. Thus, on the one hand, a power limited in terms, has, in favor of the intention, been deemed a general power, whilst on the other hand, a general power, in terms, has been cut down to a particular purpose." And this position is fully supported by the authorities.

Thus, in *Hinchinbroke* v. *Seymour*, (1 Br. Ch. C. 395,) there was a power in a settlement to raise a portion for a younger child, *at such time as the father should direct.* He directed it to be raised when she was 14 years of age ; and she dying, he files the bill for it as her administrator. The Lord Chancellor says, " the meaning of a charge for children is, that it shall take place when it shall be wanted. It is contrary to the nature of such a charge, to have it raised before that time ; and although the power is, in this case, to raise it when the parent shall think proper, yet that is only to enable him to raise it in his own life, if it should be necessary. It would have been very proper so to do, upon the daughter's marriage, or for several other purposes ; but this is against the nature of the power." In *Tankerville* v. *Coke*, (Mose. 146,) it was held that a power should be so construed as to effectuate the intention of the parties. There an act had been done which the terms of the power authorized; but which was evidently against the intention of the donor. In *Morris* v. *Preston*, (7 Ves. Jun. 547,) a provision, in case of the death of a trustee, for the substitution of another, and a conveyance by the survivor, so that he

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

(o) Pow. on Mort. 13, 14 *Croft* v. *Powell et al.*, Com. Rep. 603. 10 John. 196, per Kent, Ch. J.

Rules of construction as to powers in general.

Cases.

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

and the new trustee should be jointly interested in the trust, was, by the concession of counsel, admitted to be satisfied by the *substitution of two trustees*, after the death of both the former, against the express terms of the power; because it was the evident intention of the power, that new trustees should be appointed, whenever circumstances might require it. In *Ren* v. *Bulkeley*, (Doug. 292,) Ld. Mansfield says, "the creation, execution and destruction of powers depend on the substantial intention and purpose of the parties." *Bristow* v. *Warde*, (2 Ves. Jun. 336,) *Talbot* v. *Tipper*, (Skin. 427,) *Mildmay's case*, (1 Co. 175, a.) *Liefe* v. *Saltingstone*, (1 Mod. 189,) 1 Freem. 149, 163, 176, S. C. all establish the same doctrine. It is also illustrated and confirmed by the case cited by the Chancellor of *Roberts* v. *Dixall*, (2 Eq. Cas. Ab. 668,) and *Long* v. *Long*, (5 Ves. 445,) which, as he has well observed, "show the liberal construction given to powers in equity, in furtherance of the end for which they were created."

The intent, not merely the letter, is to be regarded. In construing a power of attorney, therefore, in order to ascertain whether it has been well executed, the letter of the instrument is not to be exclusively regarded; but the important inquiry is, have the intentions of the parties been carried into effect.

Now I cannot entertain a doubt from the circumstances of this case, that Wilson used the term "mortgage," in the power of attorney, in its popular and customary sense in this country; that is, as descriptive of an instrument containing not only a conditional conveyance of the land but also a power to sell in default of payment. There is nothing on the face of the instrument, evincing a contrary intention. There is no peculiar caution manifested on the part of Wilson, in the delegation of power to his attorney, from which it can be inferred that he intended the terms employed by him should receive the most rigid construction of which they were susceptible. On the contrary, the language used is general and comprehensive. He empowers him to give *one or more mortgages*, to do all things necessary and lawful to obtain a title to the land, and to secure the consideration money to Williamson.

Faulkner and his associates, who originally contracted for this land with Williamson, must be supposed to have known and understood that the securities always required by the Pultney estate were mortgages containing powers to sell, and that the mortgage, which they were bound to give, was of that description. The contract was made in this state, and to be executed here where hardly any other kind of mortgage was in use. Wilson was the assignee of one of those associates, entitled to all his rights, and subject to all his responsibilities under the contract with Williamson. If, then, the original associates were bound to give a mortgage containing a power of sale, which I apprehend cannot be questioned, Wilson, as the assignee of one of them, could not have compelled Williamson to give him a deed, without tendering such a mortgage. If not, then the authority to insert such a power in the mortgage was given to the attorney by the general terms, conferring upon him "*power and authority to do and perform all things necessary and lawful to obtain a deed.*" Without such a clause in the mortgage, no deed would have been given. It was, then, necessary to insert it.

I am, therefore, of opinion, upon the first point, that the attorney, Faulkner, had authority to insert in the mortgage a power of sale under the statute, and that the foreclosure is not to be impeached on that ground.

2. I know of no necessity for recording the power of attorney at all, unless it be true, as a general proposition, that whenever the law requires an instrument to be registered or recorded, if that instrument is executed by attorney, the power of attorney must be recorded also, which was not contended for upon the argument, and I apprehend cannot be maintained.

The power to the mortgagee to sell, contained in the mortgage, must be recorded, before the deed to the purchaser under the power be executed: but that is for the benefit of the purchaser only, to perpetuate the evidence of the authority by which the sale was made; and the mortgagor can not impeach the sale, if the power is not recorded. (1 Caines' Cas. in Err. 17, per Kent, J.)

Admitting, therefore, that there was the same necessity

Faulkner had authority to insert power of sale.

Not necessary to record power of attorney.

Mortgagor cannot object that power of sale is not recorded.

Wilson
v.
Troup.

So of the pow-
er from Wil-
son.

Whether, if
a mortgagee
conveys part
of the mort-
gaged pre-
mises, it di-
vests him of a
power to fore-
close for the
whole.

Nature of
power of sale.
It is coupled
with interest;
Appendant;
Not in gross.
Distinction.

Conveyance of
whole would
pass, not ex-
tinguish pow-
er.

by law for recording the power of attorney to Faulkner, that there was for recording this power to sell, the mortgagor could not avail himself of the omission to record it. The execution of the power of attorney is admitted by the appellants, and the objection is not to the proof of the execution.

The sale, therefore, is not to be impeached on this ground. But,

3. It is contended that by the sales of portions of the mortgaged premises by Troup, before the foreclosure, the power to sell contained in the mortgage, was either extinguished, or passed to his grantees ; that the sale, therefore, under the mortgage, was without authority.

The power of the mortgagee to sell the mortgaged premises, is undoubtedly a power coupled with an interest, (*Bergen* v. *Bennett*, 1 Caines' Cas. in Err. 15, per Kent, J.) and it may perhaps be conceded, that it is a power *appendant* or *annexed* to the estate, and not a *power in gross*. These powers are thus distinguished by Hargrave and Butler, in their notes to Coke upon Littleton, (note 298 to Co. Litt. 342 b.) The former, that is a power appendant, " is where a person has an estate in the land, and the estate to be created by the power, is to (or may) take effect in possession, during the continuance of the estate to which the power is annexed, as a power to tenant for life in possession, to make leases. A power in gross is, where the person to whom it is given has an estate in the land, but the estate to be created under or by virtue of the power, is not to take effect till after the determination of the estate to which it relates."

Now, the power of the mortgagee to sell, is a power to create or acquire to himself the equitable estate in the land, during the continuance of the legal estate conveyed to him by the mortgage. It seems, then, more properly to fall within the description of powers annexed to the estate, than any other, and the question is, as to the effect of a conveyance of a part of the estate to which the power is annexed, (before the power is executed,) upon the power itself.

A conveyance by the mortgagee of his whole estate, would undoubtedly pass, and not extinguish the power. This is the common case of an assignment. The assignee takes not

only the legal estate, but all the remedies or powers attached to it. But the conveyance of a portion of the estate, will not, in law, carry with it a corresponding portion of the power, because this is in its nature indivisible. It can operate but once, and then is exhausted.

The effect then of a conveyance of a part of the mortgaged premises by the mortgagee, I apprehend to be this : It produces a suspension of the exercise of the power as to the part conveyed, in hostility to the rights of the grantee ; that is, the grantee shall not defeat his own grant. But the operation of a suspension of the power, whether it applies to the whole or a portion of the estate, is merely to postpone the vesting of the estate, or interest created by, or acquired under the power, in *possession*. It does not suspend or affect the right to execute the power, and perfect the title to the estate. But the *possession* of the estate, the right to which has been acquired by the execution of the power, shall be suspended or kept from the donee of this power, so far as his previous acts render it just and equitable that it should.

*Grant of part suspends exercise of power upon this portion, in hostility to the right conveyed.*

*Effect of suspension.*

This principle is clearly recognized by Sugden in his Treatise on Powers, 52, and supported by several cases, (*Snape* v. *Turton*, Cro. Car. 472. *Goodright* v. *Cator*, Doug. 447.)

The principle is familiarly this : A mortgagee in possession leases a portion of the mortgaged premises for a year. At the end of six months, he sells the whole of the premises under his power, and becomes himself the purchaser. The power is well executed, and vests the equity of redemption in the whole of the premises in the mortgagee, subject, however, to all the rights of his lessee. So far as the *possession* of the estate, or interest acquired under the power, is inconsistent with his lease, it shall be suspended, but shall take effect as to the residue.

*Illustration.*

The sale by Col. Troup, therefore, of portions of the mortgaged premises, neither extinguished nor suspended his right to foreclose the equity of redemption. Having become the purchaser under the power, his possession shall be suspended so far as it is inconsistent with his previous grant ;

*Troup's right to foreclose not extinguished by partial sale.*

ALBANY,
Dec. 1823.

Wilson
v.
Troup.

Purchase en-
ured to bene-
fit of grantees.

Partial sales
did not effect
right of mort-
gagor.

Foreclosure
valid.

Mortgagee
may purchase
under power,
though he has
conveyed a
part.

His grantees
are assignees
*pro* *tanto.*
Trustee may
purchase for
benefit of his
*cestuy* *que*
*trust.* No one
but him can
question pur-
chase.

and his grant having been in fee, he can never claim any thing under the power in relation to the lands granted.

His purchase, therefore, shall enure to the benefit of his grantees—" For, if a man sell land which is not his, and afterwards purchase it, he shall be bound by his deed, and not be permitted to aver he had nothing." (Per Kent, J. in *Jackson* v. *Bull,* 1 John. Cas. 90. *Iseham* v. *Morrice,* Cro. Car. 110. *Ren* v. *Bulkeley,* Doug. 291.)

The sales by the mortgagee, did not in the least affect the rights of the mortgagor. The mortgage was, at that time, valid and subsisting; the sales were subject to it, and the mortgagor, upon redeeming, could have turned the purchasers out of possession, as well as the mortgagee himself.

I am, therefore, of opinion on this point also, that the foreclosure is not to be impeached.

Nor is there any force in the objection, that the Pultney estate had no right to purchase at the mortgage sale, after having sold portions of the mortgaged premises. That they still continued to be mortgagees, necessarily results from what has already been said; but whether they were so or not, is perfectly immaterial. The 10th section of the act concerning mortgages (1. R. L. 375) provides, " that no title to mortgaged premises, derived from any sale made in virtue of a special power, shall be questioned, impeached or defeated, either at law or in equity, by reason that the mortgaged premises were purchased *in by the mortgagee, or his or her assignee* (or assignees) *or for his, her or their benefit or account.*" I have already shown that the purchase by Col. Troup, enured to the benefit of the grantees of the mortgagee, so far as it was hostile to those grants. So far as they had any interest in the mortgaged premises, they may be considered as assignees of the mortgagee, and the purchase by him *was for their benefit and account;* and admitting he was trustee for them, a trustee has undoubtedly a right to purchase, (not for his own benefit,) *but as the agent and for the benefit of the cestuy que trust.* No one but the *cestuy que trust* has a right to call in question, or set aside a purchase made by the trustee, (*Davoue* v. *Fanning,* 2 John. Ch. Rep. 252.) The mortgagor cannot say that the mortgagee was

trustee for him, with respect to the surplus which might be produced by the sale, and that he, therefore, is one of the *cestuy que trusts*, and has a right to question the purchase by the trustee. He purchased, either as mortgagee or for the benefit and account of the assignees of the mortgagee, or in neither of those characters. If in either of them, the statute authorizes the purchase. If in neither, then he was not trustee, and had the same right to purchase as any other individual.

But the truth is, Troup was mortgagee, and the proceedings were properly conducted in his name, and could have been in the name of no other person. The mortgage never was assigned. If it had been, it might have been necessary for the assignees to have united in the proceeding under the statute. Though if this should be omitted, it might well be questioned, whether the mortgagor could be received to object. The power (in default of paying the money) authorizes the mortgagee, or his assignees, to sell or convey the premises : and it would seem in point of form, to be well executed by the mortgagee, whether he retained the interest of the mortgage or not. The right of the mortgagor could, in no manner, be varied or affected by it. The proceeding under the statute is not a suit to which a defence can be made. However, it is unnecessary to express any opinion upon this point, because there never was an assignment of the mortgage ; and admitting that the assignee of a mortgage ought to be a party to the foreclosure, it can hardly be contended, that any person who may have an equitable interest under the mortgagee, must be made a party.

I am of opinion, therefore, that the sale of the mortgaged premises is not to be impeached on any of the grounds taken by the appellant's counsel, and that the equity of redemption has been legally foreclosed.

The conclusion to which I have come upon this view of the case, renders it unnecessary for me to consider the question of abandonment.

Upon the question of fraud, I shall content myself with saying, that the case affords no color for the imputation.

ALBANY,
Dec. 1823

Wilson
v.
Troup.

Whether proceedings to foreclose under statute should be in name of mortgagee or his assignees, &c.

*Semb.* a statute foreclosure by the mortgagee, even after he had assigned, would be well in point of form.

Foreclosure not impeached on any ground.

Abandonment.

No ground to allege fraud.

Wilson
v.
Troup.

Col. Troup, when he entered upon the agency of the Pult-ney estate in 1801, received the quiet and peaceable posses-sion of the lands in question, together with the other lands belonging to the estate. No act of ownership had ever been exercised over it by the mortgagor. It had been treated and considered by Williamson, who preceded Col. Troup in the agency, and who made the sale to Wilson, as unincum-bered land, and portions of it had been sold by him. No-thing had been paid by Wilson upon the mortgage, nor any effort made to redeem. The deed from Williamson to Wil-son was found upon the files of the agency. These circum-stances certainly justified the belief which existed in the of-fice, that the purchase had been abandoned by Wilson; and Col. Troup, acting under that impression, sold and conveyed, in fee, portions of the mortgaged premises, as he asserts, and as the facts clearly show, *in the purest good faith.* Deeming it, however, prudent to have his title made technically correct, he applied to Wilson in 1807, for a release of his equity of redemption, which was refus-ed, unless Col. Troup would make him some compensation for it, which he declined doing. This application of Col. Troup was not succeeded by any offer on the part of Wilson to redeem; nor did he ever offer to redeem before the fore-closure. A flourishing village has grown up on that por-tion of the premises, which has been sold by Col. Troup. I have not been able to find, in these circumstances, any thing to impeach the fairness of the respondent's conduct, or to entitle the appellants to the peculiar favor of a Court of Equity.

Decree should be affirmed.

I am accordingly of opinion, that the decree of his Honor, the Chancellor, should be affirmed.

Whether Faulkner was authorized to execute pow-er of sale.

SAVAGE, Ch. J. (After stating the facts.) The question first in order is, whether Faulkner was authorized to execute the mortgage? If not, there is an end of the controversy.

By the power of attorney, he was expressly "to sign, seal, deliver and acknowledge a mortgage, &c., to the amount of the consideration money remaining due." Now, the consideration money remaining due, was the whole sum

for which the lands were sold, $1 50 per acre, and the value of the mills.   It is not denied that the mortgage is for the true sum; but it is contended, that the power to sell constitutes no part of the mortgage, and is, therefore, not within the terms of the power given to Faulkner.  Although the instrument without the power of sale would still be a mortgage, yet the fair and common acceptation of the term *mortgage,* undoubtedly is, the instrument as usually drawn, and in common use as a mortgage, where the power of Faulkner was to be executed.   The invariable practice of the Pultney land office, and of the whole community, at least in the state of New York, was to incorporate the power to sell.   Our statutes supposed such a power, and W. Wilson must have intended to give a mortgage in the usual form, and granting the usual remedies.   Hence the power of attorney adds these words : ' to do and perform all things necessary and lawful to obtaining to me and for my use, a title to the aforesaid 600 acres of land, and securing the consideration money therefor, to the aforesaid Charles Williamson."   I have no hesitation in saying, that Faulkner was authorized to execute the mortgage with the power to sell, which it contained.

2. Although the presumption is strong, that the purchase was abandoned, before the year 1800, and the agents of the estate proceeded upon that ground in selling parcels of the premises, yet there is no evidence of such abandonment, but what is deducible from the acts of the agents, and the acquiescence of Wilson ; but as notice of those acts is not brought home to him, he ought not to be prejudiced by them. Besides, if there was an abandonment, it appears to have been waived by the subsequent application made by Troup to Wilson, for a release of the equity of redemption.

3. In my judgment, therefore, the rights of the parties must rest on the regularity of the foreclosure.   To this it is objected, that the power of attorney from Wilson to Faulkner was not recorded according to the provisions of the act concerning mortgages.  (1 R. L. 372.)   The answer given to this objection is, that the power was actually recorded, before the sale—that this being considered irregular, as the

Mortgage as used in power, means instrument in use as a mortgage, where power was to be executed.

Practice in this state was to incorporate power of sale.

Faulkner, therefore, did not exceed his power.

Rights of parties rest on the regularity of foreclosure.

Wilson
v.
Troup.

Recording powers after sale was enough as against mortgagor,

Who has no right to object, though not recorded.

proof upon which it was recorded had been taken out of the state, it was afterwards regularly proved, and again recorded. The same difficulties are raised as to the power of sale. Although, the recording was after the sale, there can be no doubt that it is sufficient to sustain the previous proceedings. The question as to the latter power, I consider settled by this Court in *Bergen* v. *Bennet*, (1 Caines' Cas. in Err. 17.) It was there decided, that the omission to record the power will not affect the proceedings as between the mortgagor and mortgagee. The recording is for the benefit of the purchaser, to protect him against other purchasers or creditors; but the objection cannot be made by the mortgagor.

I concur in the result of the opinions delivered, that the circumstance of Troup's having conveyed a portion of the mortgaged premises did not divest him of the power to foreclose, as the administrator of Sir William Pultney.

Testimony of Haight was rightly suppressed by chancellor.

In the view which I have taken of this controversy, it does not become important to express an opinion as to the competency of S. S. Haight's testimony. I have, however, no doubt that the communications made to him by Troup, in relation to the foreclosure, are to be regarded as confidential communications between attorney and client; and that the Chancellor was correct in suppressing them.

On the whole case, therefore, I am of opinion that the decree of his honor the Chancellor be affirmed.

Decree unanimously affirmed.

The Court being *unanimously* of this opinion, it was, thereupon, ORDERED, ADJUDGED and DECREED, that the decree of the Court of Chancery be affirmed, with costs to be taxed; and that the record, &c.