HENRY TEN EYCK, Respondent, *v.* OSCAR CRAIG and OTHERS, Executors, etc., of JOHN CRAIG, Deceased, and HELEN M. POWERS, Appellants.

*Trustee and cestui que trust — when relation exists — Agent — when unable to purchase property of principal — Mortgagee in possession — rights of.*

In April, 1860, one Stewart, the owner of certain premises in the city of Rochester, upon which there were three mortgages, one of which was owned by one Sprague, and the other two by Craig, the defendant's testator, executed another mortgage upon the same to Craig, and at the same time assigned to him

* Beers v. Waterbury, 8 Bosw., 411.

a lease of the same, executed to one Cook, in order to indemnify him for any liability he might incur, as surety on an undertaking given by Stewart on appeal from a judgment recovered against him. The assignment authorized Craig to collect the rents, and from them to pay the interest on the mortgages, and the insurance on the property; the balance to be held to meet any liability incurred by him upon the undertaking. *Held*, that, though by the assignment Craig became the agent of Stewart, yet the subject of the agency was not the property itself, but the rents thereof, which were to be received by Craig and applied as directed by the assignment; that such agency did not impair any right of Craig as mortgagee, or impose any burden or disability upon him; nor did it incapacitate him from purchasing an outstanding title to the property.

The relation between a mortgagee in possession and the mortgagor, is not one of trust or confidence, nor has he any duty to perform in respect to the lands mortgaged, which incapacitates him from purchasing an outstanding title thereto.

On the 17th of December, 1860, and while Craig was collecting the rents of the premises, by virtue of the assignment of the lease, he purchased the same at a sale, under an execution issued on a judgment against Stewart. Fifteen months after such sale, the premises were redeemed by a judgment creditor of Stewart, who took a deed thereof from the sheriff, and subsequently conveyed the same to Craig. The plaintiff claimed that the redemption was made with money of Stewart's, and for his benefit, and that Craig had notice of these facts. *Held*, that if the redemption was valid, Craig got a good title to the premises, and that if it was invalid, as made ostensibly by a judgment creditor, but really by a trustee of the judgment debtor, after the expiration of the time within which debtors may redeem, it was a nullity, and that Craig was entitled to have the equitable title, acquired by him at the purchase at the execution sale, consummated by a conveyance from the sheriff.

On the 27th of April, 1860, Stewart and wife conveyed the premises to Sanger, who died leaving a will by which he devised the same to his wife, who, on the 3d of January, 1867, conveyed the same to the plaintiff. In an action brought by him to redeem, *held* (1), that the conveyance to him by Mrs. Sanger was void as against the defendants, as they were, at the time of its execution, in possession of the premises, claiming under a title adverse to that of Mrs. Sanger; (2), that even if the relation of trustee and *cestui que trust* existed between Stewart and Craig, the purchase by the latter could only be avoided by Stewart, or his heirs or personal representatives.

If, under any circumstances, such a right of election to avoid a purchase made by a trustee, would pass to the grantee of the property purchased, by virtue of a conveyance thereof by the *cestui que trust*, no such result would follow the conveyance to Sanger, as it was made several years before the purchase by Craig, which it is now sought to avoid.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

The action was brought to redeem, from a mortgage held by the defendants' testator, property in Rochester, known as " Congress

Hall," and for an accounting of the rents and profits received therefrom. The following are the findings of fact and conclusions of law by the court:

On the 23d of April, 1860, Nelson P. Stewart, then being the owner in fee of certain real estate, situate in the city of Rochester, known as "Congress Hall," executed a mortgage of that property, and of a farm in Erie county, to the defendant, John Craig, to indemnify him for becoming Stewart's surety in an undertaking, made to stay proceedings on a judgment recovered in the Supreme Court, on the 24th day of October, 1859, in favor of Maria L. Dehon, executrix, against Stewart, for $10,184.83, on an appeal taken by Stewart from said judgment. At the time of the execution of said mortgage, said Congress Hall property was subject to three prior mortgages, amounting to about $19,000, two of which were then owned by the defendant, Craig, and the third by Asa Sprague, who subsequently transferred it to the defendant, Craig. The said Congress Hall property was also subject, at the time of the execution of said indemnity mortgage, to a lease executed by Stewart to Robert D. Cook, for the term of five years from the 1st day of May, 1860, at a rent of $3,600 a year, payable monthly in advance.

On the 24th of April, 1860, Stewart assigned said lease and the rents payable thereon, to Craig, as further indemnity for his becoming surety as above stated, by an instrument in writing, of which the following is a copy, to wit:

" Whereas, On or about the 24th of October, A. D. 1859, one Theodore Dehon, of New York, recovered a judgment in the Supreme Court against Nelson P. Stewart, for the sum of $10,184.83, entered upon a report of referee, from which judgment said Stewart has appealed to the General Term of the Supreme Court, and for the purpose of staying proceedings upon the said judgment, the undersigned, John Craig, has consented to sign and execute the necessary undertaking to stay the proceedings upon said judgment."

" Now, for the purpose of securing the said Craig for becoming such surety (in addition to other securities made to him), the said Nelson P. Stewart hereby sells, assigns and transfers to said Craig, the annexed lease of Congress Hall, executed by R. D. Cook to

me, and said Craig is hereby authorized to demand and receive the rents, reserved by said lease for the term thereof, or until said Craig shall be relieved from liability on his undertaking, from which rents said Craig is to pay the interest upon the mortgages now on said premises held by himself and Asa Sprague, the insurance thereon, and the balance of said rents are to be held by said Craig to meet any liability upon his said undertaking upon the appeal aforesaid, upon which balances so remaining in his hands, said Craig is to allow interest to said Stewart."

" And for the more ample protection of said Craig, it is hereby agreed that in case said Cook, from any cause shall fail to meet his rents, or shall fail to perform his covenants, or to keep said house, and the said premises shall be vacated, or said lessor shall be entitled to the possession, that then, and in that case, the said Craig shall have full power and authority to take the actual possession of said premises, and relet the same in the name of said Stewart, holding the lease and rents under his assignment for the term or period for which he shall remain responsible upon said undertaking ; when said Craig shall be relieved of responsibility upon the said undertaking, he is to render an account and pay over the rents which may have accumulated in his hands as above provided. Rochester, April 24th, 1860."

(Signed.)                  " NELSON P. STEWART."
                                     " JOHN CRAIG."

Craig was made liable on his said undertaking as surety, and was compelled to pay $12,301.24 thereon, on the 7th of August, 1862.

Craig foreclosed his indemnity mortgage, so far as it related to the property in Erie county, and realized therefrom the sum of $2,615.88.

At the time when Craig signed said undertaking, and took said indemnity, said Congress Hall property was subject to a judgment theretofore recovered in the Supreme Court in favor of the Madison County Bank, or the trustees thereof, against said Stewart, for the sum of $2,500 and costs, of the existence of which judgment Craig was ignorant at that time.  On being informed of it, he refused to justify as a surety to said undertaking, unless he was indemnified against said judgment, and therefore Stewart executed a bond,

dated the 1st day of June, 1860, and procured the same to be exe- cuted by George K. Johnson and the defendant, Elisha C. Litchfield, as his sureties, in the penal sum of $5,000, conditioned to protect said Congress Hall property against the judgment last above men- tioned, which bond was delivered to Craig, and he then justified as surety to the undertaking given on the appeal. On the 5th day of December, 1863, Craig recovered a judgment on said last men- tioned bond, against Litchfield, for $5,179.69, which judgment Litchfield paid to Craig. On the 17th of December, 1860, the Congress Hall property was sold on an execution issued upon said judgment in favor of the Madison County Bank, and was bid off at such sale by the defendant, Craig, for the sum of five dollars. On the 17th of March, 1862, Daniel W. Powers, by virtue of a judgment recovered by him against Stewart, on the 26th of January, 1860, for $1,481.78, redeemed the Congress Hall property from said sale, and on the 21st of March, 1862, the sheriff in completion of such sale, executed a deed of said property to Powers. On the 7th of May, 1864, Powers, by deed of that date, conveyed said property to the defendant Craig, in consideration of the sum of $1,753.53, paid by Craig. The deed was recorded 9th of February, 1867.

The judgment under which Powers redeemed, had been sold and assigned by him before the redemption, and on the 10th of April, 1860, to Oliver M. Benedict of Rochester, in consideration of the amount then due on the judgment, paid by Benedict to Powers, at the time. On the day of the redemption, to wit, the 17th of March, 1862, Benedict reassigned the judgment to Powers, without any valuable or valid consideration. At the time of each of those assign- ments, and for several years next preceding that time, Benedict, who was an attorney and counselor at law, was the attorney of Stewart, both in law and in fact, and was his confidential adviser. He pur- chased said judgment, and took the assignment of it in his own name, at the request of Stewart. And the money which he paid for it to Powers, was furnished by Stewart, or was replaced by him imme- diately after such payment, in pursuance of an arrangement between him and Benedict, made before the money was paid by Benedict. There is no evidence that the assignment of the judgment from Benedict to Powers was authorized by Stewart, or that he knew of

it. Previously to the time of such assignment, and in September, 1861, or thereabouts, Stewart became paralytic, and was thereafter incapable of doing business, or even of talking, except with great difficulty, and to a very limited extent. Benedict continued to attend to Stewart's business after his paralysis, as before, and went to Detroit several times, where Stewart resided, to advise with him and his wife in regard to his affairs. In the years 1861 and 1862, Benedict was also the attorney and counsel of both Powers and Craig, and part of the time, during those years, Craig made Benedict's office his place of business. During the period of the transactions above stated, Powers was the son-in-law of Craig, and lived in the same family with him. During much of that period, Craig kept his bank account with Powers, and at the same time made the banking office of the latter, his place of business.

While Powers held the legal title to Congress Hall, to wit, from March, 1862, to May, 1864, he did not take possession of the premises, or receive rents on his own account, but he occasionally received the rents as Craig's agent, and placed them to Craig's credit in his bank. The defendant, Craig, received the rents of Congress Hall, had the management of the property, paid the taxes and interest on the incumbrances, and made repairs uninterruptedly, from the commencement of the term of the lease to Cook, to wit, the 1st day of May, 1860, to the time of the trial of this action, and has never accounted to Powers for the rents received while Powers had the legal title. Down to the time when Powers redeemed, Craig kept the accounts with Stewart, but after that time he kept them with "Congress Hall," and not at any time with Powers. When Craig took the deed from Powers, the premises were occupied by Purcell, the assignee of Cook, the original lessee. On the 27th of October, 1864, Craig leased the premises to Purcell for the term of five years from the 1st day of May, 1865, and subsequently, to the latter date, Purcell occupied under that lease, and paid rents to Craig as his landlord.

The rents which, as stated, were $300 a month under the Cook lease, were the same under the Purcell lease, to May, 1870, and thereafter were $400 a month. By the agreement between Stewart and Craig, the latter was not only to be indemnified against loss by reason of becoming surety on the appeal, but was also entitled to

take out of the rents, the sum of $1,000, as a compensation for furnishing sureties on the undertaking given on such appeal.

On the 27th of April, 1860, Stewart and his wife conveyed " Congress Hall " to Henry K. Sanger, by deed, subject to the several mortgages above stated, except the indemnity mortgage. Sanger died previously to July, 1864, leaving a will duly executed, bearing date the 7th of May, 1862, which was admitted to probate, 19th of July, 1864, and by which he gave to his wife all his estate, real and personal, and named her as sole executor. Mrs. Sanger, the wife of Henry K. Sanger, as devisee and executrix, conveyed Congress Hall to the plaintiff, Henry Ten Eyck, by deed dated 3d of January, 1867, and recorded 16th of April, 1867. The deed recites a consideration of $200. This action was commenced 13th of July, 1867.

On these facts the court decided as matter of law :

That the defendant, Craig, on entering upon the collection of the rents, on the assignment of the lease of the Congress Hall property, was in the position of a trustee for Stewart, in respect to the leased property, and his purchase of the same while he occupied that position, inured to the benefit of the *cestui que trust*, at his election.

That when Benedict, the attorney and confidential adviser of Stewart, held the judgment under which Powers redeemed, he held it in trust for Stewart. Powers, as the assignee of Benedict, without consideration, took Benedict's right in the judgment, and no more. When Powers redeemed, he took the land subject to the trust which attached previously to the judgment in his hands.

From the intimate relations existing between Powers and Craig, and from the circumstances' above found respecting their dealings with each other, and with the Congress Hall property, Craig is chargeable with notice of said trust. That Stewart, while he owned the Congress Hall property, had the right to redeem the same, on paying to Craig the amount of his liens and advances, over and above his receipts. That the plaintiff, Ten Eyck, by means of the successive conveyances above stated, has succeeded to such right of Stewart to redeem said property, and is entitled to redeem.

*George F. Danforth,* for the appellants; (a brief was also filed on their behalf by Judge Gardiner). Even if Craig was in possession as mortgagee, the relation of trustee and *cestui que trust* could not be inferred from that fact. (*Dobson* v. *Land,* 8 Hare, 220; *Mott* v. *Wakely,* 3 Edw., 590; 3 Simons, 42; 11 Clark & Finnelly, 648; *Williams* v. *Townsend,* 31 N. Y., 415; *Chapman* v. *Mull,* 7 Ired. Eq., 292; 1 Hilliard on Mort., 360; 2 Story's Eq., 278, note 3; *Hardman* v. *Johnson,* 3 Merivale, 347; *Randall* v. *Russell,* id., 190; *Norris* v. *Le Neve,* 3 Atk., 26; *King* v. *State Mu. Ins. Co.,* 7 Cush., 7; *Waring* v. *Smith,* 2 Barb. Ch. R., 135; *Clark* v. *Beach,* 6 Conn., 151.) The deed to the plaintiff was void, the premises being held adversely at the time of its execution. (*Burhans* v. *Van Zandt,* 7 Barb., 91; *Mosher* v. *Yost,* 33 id., 277, 281; *Crary* v. *Goodman,* 22 N. Y., 170; *Fish* v. *Fish,* 39 Barb., 513; *Webster* v. *Van Steenbergh,* 46 id., 211; *Livingston* v. *Proseus,* 2 Hill, 526; *Lowber* v. *Kelly,* 17 Abb., 452.)

*Henry R. Selden* and *J. P. Whittemore,* for the respondent. Stewart, if living, could redeem from the execution sale. (*Howell* v. *Baker,* 4 John. Ch., 120; Kerr on Frauds, 163; *Howell* v. *Ransom,* 11 Paige, 538; Lewin on Trusts, 725; *Bush* v. *Lathrop,* 22 N. Y., 535; *Grimstone* v. *Carter,* 3 Paige, 421; *Hawley* v. *Cramer,* 4 Cow., 723.) Craig was mortgagee in possession, and as such could not purchase the premises. (4 Kent Com., 164; Coote on Mort., 366; *Trimleston* v. *Hamill,* 1 Ball & Beatty, 385; *Vanmetre* v. *Griffith,* 4 Dana, 92; *Jackson* v. *Delancey,* 13 Johns., 537; *Cholmondeley* v. *Clinton,* 2 Jac. & Walk., 181; *Bergen* v. *Bennett,* 1 Caines' Cas., 16; 1 Paige, 68; *Gardner* v. *Ogden,* 22 N. Y., 327; *Dickinson* v. *Codwise,* 1 Sand. Ch., 226; *Davoue* v. *Fanning,* 2 Johns. Ch., 252.) That the statute does not apply to buying equitable titles. (*Wood* v. *Griffith,* 1 Swanst. Rep., 55; *Allen* v. *Smith,* 1 Leigh [Virg.] Rep., 231; *Baker* v. *Whiting,* 3 Sumner, 476; 4 Kent Com., 449, note *a*; *Clapp* v. *Bromagham,* 9 Cow., 556; *Zeller's Lessee* v. *Eckhert,* 4 How. [N. S.], 289.)

Gilbert, J.:

There are two insuperable objections to the granting of the relief which the plaintiff seeks, unless a mortgagee can be con-

verted into a trustee. In the first place, the conveyance from Mrs. Sanger to him, under which alone he claims any interest in the premises in controversy, is wholly inoperative and void as against the defendants, for the reason that, when said conveyance was made, the decedent, Mr. Craig, was in possession of said premises, claiming under a title adverse to that of Mrs. Sanger.* There is, therefore, a fatal lack of that privity, which is requisite to entitle the plaintiff to redeem.

In the second place, assuming that the relations between the deceased Mr. Stewart and the decedent Mr. Craig, independent of the mortgages, were those of *cestui que trust* and trustee, still the plaintiff is a stranger to the trust. The purchase of Mr. Craig was not void, but was voidable only at the election of the *cestui que trust*, or his heirs or personal representatives. It is perfectly valid and effectual, both at law and in equity, unless that election be exercised within the time allowed by the rule governing such cases. No person, except the *cestui que trust*, or some one standing in his place, can be heard to make such election. The purchase shall stand, if the *cestui que trust* acquiesces in the sale.† No one but the *cestui que trust*, has a right to call in question a purchase made by the trustee.‡ If, under any circumstances, such a right of election to avoid a purchase made by a trustee, would pass to the grantee of the property purchased, by virtue of a conveyance thereof by the *cestui que trust*, no such result followed the conveyance by Stewart to Sanger; for the purchase by Craig, which the plaintiff seeks to avoid, was made several years after that conveyance. Nor did any such right inure to Sanger, by virtue of the covenant of warranty contained in such conveyance, for the reason that none existed in Stewart. Stewart, or his heirs or representatives, might, if the alleged trust be assumed, have claimed the benefit of Craig's purchase, and in that way his grantee, including the plaintiff, might have succeeded to his rights. § But no such claim has ever been made. On the contrary, for aught that the evidence shows, they acquiesced in the purchase by Craig.

* 1 R. S., 739, § 147; 2 id., 691 § 6

† Jackson v. Van Dalfsen, 5 J. R., 43; Same v. Walsh, 14 id., 415; Jennison v. Hapgood, 7 Pick., 1.

‡ Wilson v. Troup, 2 Cow., 238.        § Hunt v. Amidon, 4 Hill, 345.

Perhaps the court might, in a proper case, compel a person, standing in Mr. Stewart's relation to the property in dispute, to disaffirm acts done by his trustee, which would work a breach of his warranty, and so avoid a purchase made by the trustee for his benefit, for the purpose of protecting the title of his grantees.* But, for obvious reasons, no such decree could be made, unless the *cestui que trust*, or, in case of his death, his heirs or personal representatives, were parties to the suit. It is said that a trustee cannot set up a title adverse to his *cestui que trust*, and that a conveyance of the legal title to the lands in dispute, should be held to embrace an assignment of any equitable right to redeem. Granted. But, if the foregoing views are correct, the plaintiff is not a *cestui que trust*, nor had his grantor, Mrs. Sanger, any such equitable right to assign. If, for any reason, the conclusions we have expressed, should be deemed erroneous, we are nevertheless of opinion, that, upon the facts of the case, the purchase of Mr. Craig was a perfectly valid one. With respect to the findings of the court below — that the judgment under which Powers redeemed, was held by Benedict in trust for Stewart; that Powers took the assignment thereof, subject to that trust; and that Craig is chargeable with notice thereof — it is at least very questionable whether they are warranted by the evidence. It is not however necessary to discuss that question, because, as already shown, the plaintiff, being a stranger to the trust, cannot be heard to disaffirm the acts of the alleged trustees, or to claim in this suit, the benefit thereof himself. Stewart, the *cestui que trust*, or his heirs or personal representatives alone, are vested with that right. The court below did not find whether the legal effect of the transactions between Stewart and Benedict, in respect to the judgment, was a payment thereof, or whether the redemption, under the circumstances proved, was in contravention of the statute regulating redemptions, on the ground that it was made ostensibly by a judgment creditor, but really by a trustee of the judgment debtor, after the expiration of the period within which judgment debtors are allowed to redeem, or whether it was a fraud on the purchaser at the sale under the execution, or otherwise. These questions may not, therefore, be properly before us for adjudication. If the redemption was valid, Craig got a good

* Iddings v. Bruen, 4 Sand. Ch., 239, 277.

title by the conveyance from Powers, which must stand until assailed by Stewart, or his heirs or personal representatives. If it was invalid for the reasons suggested, it was a nullity; and Craig got a good title in equity by his purchase at the execution sale, which he is entitled to have consummated by a conveyance from the sheriff, vesting in him the legal title. His receipt of the money paid to him by Powers, in order to effect the redemption, did not destroy his right to such conveyance, unless Powers had a right to redeem. The redemption proceeding cannot be held to be valid, for the purpose of destroying the rights of Craig as purchaser at the execution sale, and at the same time be held to be invalid for the purpose of avoiding the conveyance to Craig, made by the same person who effected the redemption.

The only remaining questions relate to the finding of the court below, that " Craig, upon entering on the collection of the rents, on the assignment of the lease of the property in dispute, was in the position of a trustee for Stewart, in respect to that property, and that his purchase of the same, while he occupied that position, inured to the benefit of the *cestui que trust*, at his election." We are of opinion that this finding is erroneous. It seems to us to be a perversion of the rule, which incapacitates trustees and persons holding confidential or fiduciary relations toward others from purchasing the subject of the trust, to apply it to a person occupying the position of the decedent, Mr. Craig. He held mortgages on the lands in controversy, to secure the payment of the bonds of Stewart, the mortgagor. He had also become liable as the surety of Stewart, and held, as an indemnity against that liability, another mortgage of the same lands, made by Stewart, and also an assignment of the lease thereof for a term of years between Stewart as lessor and one Cook. Treating the assignment of the lease as constituting the relation of principal and agent between Stewart and Craig, still, the subject of the agency was not the property in controversy, but the money received by Craig for the rents thereof for a limited period. Its sole object and purpose were to enhance the security afforded by the mortgage held by Craig for his indemnity. It was not intended to impair any rights of Craig, as mortgagee, or to impose any burden or disability upon him; nor did it charge him with the duty or obligation of paying off the

judgment against Stewart, or of protecting the mortgaged premises for the benefit of the latter, in case the lien thereof should be enforced by a sale. The only duty assumed by Craig, was, to receive the. money paid to him by Cook; to apply the same as directed in the assignment; and, in a contingency which never happened, to relet the premises in Mr. Stewart's name. That duty he performed, and beyond that, his agency did not extend. We have been referred to no authority, holding that such an agency, undertaken by a mortgagee, incapacitates him from purchasing an outstanding title to the property mortgaged, and it is believed none can be found. It would hardly be contended that an agency to receive and dispose of farm products, as directed by the principal, incapacitated the agent from purchasing the farm on a sale thereof, under a decree or execution against the principal;* and yet, if there be a difference on this point between such a case and that now under consideration, it is in favor of the latter, for Mr. Craig had an interest of his own to protect by purchasing, in order to prevent such interest being cut off by the sale.

It is urged, that, upon taking the assignment of the lease, Craig, in contemplation of law, went into possession of the mortgaged premises, as mortgagee. We think that transaction had no such effect. He certainly was not in actual possession, although, ordinarily, the reception of rents and profits is equivalent to possession; yet he did not receive them in the capacity of mortgagee, or in the assertion of any right pertaining to him in that character. His right to receive them sprang solely from the assignment, and it would have ceased with the payment of the debt for which he had become surety. As mortgagee merely, he had no interest in, or right to demand or receive them.† The question is material, only, upon the supposition that a mortgagee in possession, is a trustee for the mortgagor, and therefore incapacitated from purchasing. If that proposition should be established, the plaintiff might have a right to redeem. For the trust would be raised by implication of law, from the relations between the mortgagee and the owner of the equity of redemption. Upon this principle, Craig would have been a trustee for Mrs. Sanger. She would then have had

* See Hollingsworth v. Spaulding, 54 N. Y., 636.

† Parkinson v. Hanbury, Law R. (2 H. L. Cases), 1.

the equitable right of enforcing the trust, and her conveyance to the plaintiff might be treated as an assignment of that right, which would be effectual, notwithstanding the hostile possession of Craig. But the rule referred to, has no application to mortgagees, whether in or out of possession. The relation between a mortgagee and the mortgagor, or his grantee, is not one of trust or confidence, nor has he any duty to perform in respect to the lands mortgaged, which incapacitates him from purchasing an outstanding title thereto. He is allowed by statute to purchase at a sale, conducted by himself, in execution of a power contained in his mortgage; * and the seventy-third rule of this court, which has the force of a statute, authorizes him to purchase at a sale, under a decree of foreclosure to which he is a party, plaintiff or defendant. Why, then, should he be precluded from purchasing at a sale under an execution against the mortgagor? If in possession, it is his duty to account in a way onerous to him; not however as agent or trustee, but as creditor; for all that he receives, comes to him in his own right. After his mortgage is paid, he is bound to turn over the possession to the owner of the land, not because he went in under a trust which has ceased, but because the mortgage debt has been satisfied. But no duty to protect the equity of redemption against a sale thereof, arises on being in possession; nor is any power, in fact, conferred upon a mortgagee for that purpose. † We think, therefore, it is a misnomer, to call a mortgagee a trustee of the mortgaged estate. He is a creditor having a lien. Like other creditors, who hold securities in other forms, he has opportunities to perpetrate fraud and oppression. The court will afford protection against such acts, but we are unable to discover any reason for taking a mortgagor out from the large class of debtors, who have become indebted upon the security of a pledge of their property, and thus practically making him a ward of the court. The judgments of the court of last resort in this State, appear to be decisive on this point. In *Williams* v. *Townsend*,‡

* 2 R. S., 546, § 7.

† Kirkwood v. Thompson, 2 De G., J. & S., 613; Clark v. Bush, 3 Cow., 151; See, also, Parkinson v. Hanbury, 1 Drew. & Sm., 143; S. C., 2 De G., J. & S., 450; S. C., Law Rep. (2 H. L. Case), 1.

‡ 31 N. Y., 411.

it was held, that a mortgagee might purchase the mortgaged premises, at a sale thereof for taxes. It does not appear that this mortgagee was in possession; but, in the subsequent case of *Trimm* v. *Marsh,* * it was held, in effect, that a mortgagee in possession, who had caused the mortgaged premises to be sold under an execution in her favor against the mortgagor, might purchase at such sale. The question arose in a suit in equity, brought by the mortgagor to redeem, and the court held that a purchaser with notice, might set up the title, acquired by the mortgagee at the execution sale, against the claim of the mortgagor to redeem. The same doctrine prevails in England, † and in our sister States. ‡ No case in which a contrary doctrine has been held, has been brought to our notice. *Baldwin* v. *Bannister* § is not such a case. In *Shaw* v. *Bunny,* ‖ Lord J. TURNER states that, having examined the registrar's book, he found that case to be no more than this: " that the mortgagee had bought in the dower of the mortgagor's widow for fifty pounds, and claimed to be repaid that sum upon the mortgage being redeemed, and it was decreed accordingly, apparently without dispute ; and certainly there was no claim by the mortgagee, to hold the dower which he had purchased adversely to the mortgagor." The principle on which the rule rests, also is against its application to a mortgagor, as will appear from an analysis of the real relation between mortgagor and mortgagee, and the rights and obligations of each. That has often been set forth in previous cases, and it would do no good to repeat it here.¶

Upon the whole, therefore, we are of opinion that the court

* 54 N. Y., 599.

† Cholmondeley v. Clinton, 2 Jac. & W., 182 to 185; Shaw v. Bunny, 2 De G., J. & S., 468; Knight v. Majoribanks, 2 Mac. & Gord., 10; Kirkwood v. Thompson, *supra;* Sug. V. & P. (8th Am. ed.), 689.

‡ King v. State M. F. Ins. Co., 7 Cush., 7; Walthall, Ex'r, v. Rines, 34 Ala., 92; Hurmder v. Roberts, 6 Flor., 711; Wordler v. Busch, 43 Mo., 231.

§ Cited in 3 P. Wms., 251, note *a.*                    ‖ *Supra.*

¶ See Cholmondeley v. Clinton, *supra;* Astor v. Hoyt, 5 Wend., 603; Kortwright v. Cady, 21 N. Y., 343; Stoddard v. Hart, 23 id., 556; Trimm v. Marsh, *supra,* and cases cited.

below erred in its disposition of the case, and that the defendants are entitled to a new trial.

New trial granted, with costs to abide the event.